# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH DRAKE<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL LIFE INSURANCE COMPANY<br><br>Defendant. | C.A. No. 2:17-cv-03170-JS |

## DEFENDANT NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant National Life Insurance Company moves to dismiss Plaintiff's Complaint. Plaintiff's Complaint should be dismissed with prejudice because it fails to state any claim upon which relief can be granted.

WHEREFORE, for the reasons set forth above and in the accompanying Brief in support of this Motion, which is incorporated herein in its entirety, Defendant National Life Insurance Company respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: September 11, 2017

**STEVENS & LEE, P.C.**

By: /s/ E. Thomas Henefer
 E. Thomas Henefer
 Attorney I.D. No. 55773
 111 North Sixth Street
 P.O. Box 679
 Reading, PA 19603
 Telephone: (610) 478-2000
 Facsimile: (610) 988-0803
 E-Mail: eth@stevenslee.com

Attorneys for Defendant National Life Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH DRAKE<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL LIFE INSURANCE COMPANY<br><br>    Defendant. | C.A. No. 2:17-cv-03170-JS |

**DEFENDANT NATIONAL LIFE INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Dated: September 11, 2017

**STEVENS & LEE, P.C.**
E. Thomas Henefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, PA 19603
Telephone: (610) 478-2000
Facsimile: (610) 988-0803
E-Mail: eth@stevenslee.com

Attorneys for Defendant National Life
Insurance Company

## I. INTRODUCTION

After her late husband Eric E. Drake died in August 2016, Judith Drake sought life insurance benefits under a life insurance policy (the "Policy") issued by National Life Insurance Company. National Life denied the claim because Mr. Drake's Policy lapsed in late 2015, after he failed to pay the required premiums and later failed to reinstate the Policy despite notice of its lapse. As a result, the Policy was not in force when Mr. Drake died and no benefits were due.

Without disputing that National Life sent Mr. Drake premium reminder and lapse notices, Mrs. Drake's offers a novel allegation, namely, that National Life owed a duty to send lapse notices to the Policy *beneficiary* (Mrs. Drake) and the Drakes' *agent*, Steven Fishman. Based on the alleged "failure" to send lapse notices to Mrs. Drake and Mr. Fishman, the Complaint asserts claims for bad faith, negligence, breach of contract, and breach of fiduciary duty.

National Life's duties were defined by the Policy which imposed no obligation to send a lapse notice to anyone -- even the Policy owner (Mr. Drake), much less the beneficiary or the insured's agent. The Complaint therefore fails to state a claim on which relief can be granted.

## II. STATEMENT OF FACTS

### A. Facts Alleged In The Complaint.

This Motion can and should be decided based on the factual allegations in Mrs. Drake's Complaint and on certain documents attached to and/or expressly referenced in the Complaint. Those documents consist of (1) the Policy; and (2) the premium reminder and lapse notices National Life sent Mr. Drake which are attached to the Complaint.[1]

---

[1] The Court may consider the Policy, which is referenced in the Complaint, when deciding a Rule 12(b)(6) motion. *E.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Policy has been redacted pursuant to Fed. R. Civ. P. 5.2. For ease of reference, the copy of the Policy attached has also been Bates numbered pages "Policy - 1 through 32."

1

Mr. Drake, who purchased the Policy in October 2006, was the "owner" of the Policy and Mrs. Drake was the named beneficiary. [Docket No. 1, at ¶ 6; Exhibit A at Policy – 2, 6, 18-19].[2] Mr. Drake kept the Policy in force until the Fall of 2015; however, he failed to pay the premiums due on October 1, 2015. [Docket No. 1 at p. 2, ¶ 10 and p. 21 and 16]. Mr. Drake was notified that the Policy's 31 day "grace period" for paying overdue premiums had expired, that the policy had lapsed, and that he could reinstate the Policy (without paying interest or providing evidence in insurability) by paying the premiums by December 2, 2015. [Docket No. 1 at p. 16].

Then, on December 11, 2015, Mr. Drake was notified that the Policy had lapsed and was cancelled without value. [Docket No. 1 at p. 10]. Accordingly, when Mr. Drake died on August 16, 2016, the Policy was no longer in force.

### B. Pertinent Policy Provisions.

Mrs. Drake's claims are based on the premise that National Life had a duty to send notice to her and Mr. Fishman about the overdue premium payments and the Policy's eventual lapse. [Docket No. 1 at p. 3, ¶¶ 14, 16]. But the Policy imposed no duty on National Life to send a lapse notice -- even to Mr. Drake, much less the beneficiary and an agent. Instead, the Policy imposed a duty on Mr. Drake to pay premiums in a timely way to keep the Policy in force. And, of course, the Policy provided that death benefits would be paid only if the insured died "while this policy was in force." [Exh. A at Policy – 9 ("Death Benefit")].

The Policy's provisions on premium payments and lapse are clear. First, as the Policy owner, Mr. Drake agreed to make quarterly payments of $894.04 to keep the Policy in force. [Exh. A at Policy – 2]. Premiums were "due at the end of the interval of time for which the

---

[2] The application, which is part of the "entire contract" between National Life and Mr. Drake [Exh. A at Policy – 6], provides that the "Owner" is the proposed insured (*i.e.*, Mr. Drake) unless another owner is specifically designated in the application. [Exh. A at Policy – 18-19]. No other individual was designated as the Owner.

2

preceding premium was paid." The Policy imposed no obligation on National Life to send a notice if premiums were not paid timely. Instead, the Policy provided:

> **Lapse and Grace Period.** If any premium due is not paid on or before the day it is due, this policy shall lapse as of such date. All our liability shall then cease. However, a grace period of thirty-one days from the due date, during which the insurance shall stay in force, shall be allowed for the payment of every premium due except the first.

[Exh. A at Policy – 6]. Notably, the Policy, together with the Policy application, was the "entire contract" between National Life and Mr. Drake. [Exh. A at Policy – 6]. Thus, National Life's obligations to Mr. Drake were those set forth in the Policy.

While it is undisputed that National Life in fact provided lapse notices to Mr. Drake [Docket No. 1 at pp. 16 and 10], there was no contractual requirement to do so as a precondition to the Policy lapsing under the Policy's lapse provisions. More importantly, the Policy imposed no duty on National Life to provide lapse notices to the Policy beneficiary or the insured's agent.

Nor was there any duty to provide premium notices to the beneficiary or an agent. The Policy referred only to sending premium notices if the premium amount was adjusted. [Exh. A at Policy – 6]. More importantly, the Policy imposed no obligation to send premium notices to the beneficiary or an agent; instead, as the application confirms, National Life was directed to send premium notices to the Owner (*i.e.*, Mr. Drake). [Exh. A at Policy – 6 and 18, ¶ 12].

Based on the Policy's plain terms, lapse occurred and benefits ceased (without further action) because the October 1, 2015 premiums were not paid within 31 days of the due date. [Exh. A at Policy – 6]. Therefore, because the premiums due on October 1, 2015 were not paid, the Policy lapsed as of November 1, 2015, as the Complaint confirms. [Docket No. 1 at p. 2, ¶ 10 and pp. 21, 16 and 10].

3

Because National Life was not required to send either Mrs. Drake or Mr. Fishman notice of overdue premiums or lapse, all of Mrs. Drake's claims should be dismissed with prejudice.

## III. ARGUMENT

### A. Standard Of Review

The standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6) are well-settled. Mrs. Drake "must allege facts that 'raise a right to relief above the speculative level . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "conclusory" allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). She must allege "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 & n.3. Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" satisfy the pleading standard. *Iqbal*, 556 U.S. at 677-678. Further, the Court should "disregard any legal conclusions" in reviewing the Complaint. *E.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

Mrs. Drake must also plead facts showing a "plausible entitlement to relief." *Twombly*, 550 U.S. at 557-562. There must be "facial plausibility." *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 556)). Facial plausibility exists only if the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557)). And, critically, a Court's assessment of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 677-678. Thus, "a complaint

4

must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211.

### B. Mrs. Drake Fails To State A Claim For Breach Of Contract.

Mrs. Drake's breach of contract claim fails for two primary reasons.

First, Mrs. Drake cannot state a claim for breach of contract based on the denial of benefits under the Policy because it was not in force when Mr. Drake died. *Smith v. Lincoln Ben. Life Co.,* 2009 WL 78990, at *19, *21 (W.D. Pa. Mar. 23, 2009), *aff'd,* 395 F. App'x 821 (3d Cir. 2010); *Kidd v. Prudential Ins. Co. of Am.,* 2008 WL 163055, at *17 (M.D. Pa. Jan. 15, 2008). The Policy lapsed based on Mr. Drake's failure to pay the October 1, 2015 premium when due or within the 31 day grace period; therefore, Mrs. Drake has no viable breach of contract claim based on the denial of benefits under the Policy. *Smith,* 2009 WL 78990, at *19; *Kidd,* 2008 WL 163055, at *17.

Second, Mrs. Drake's theory that National Life breached the contract by "failing" to send lapse notices to her and Mr. Fishman fails because no such duty arose under the Policy terms. As outlined above, the Policy's provisions on premiums and lapse were clear and unambiguous: (1) premiums were due on specific dates based on specific payment intervals, and (2) the failure to pay premiums when due or within the 31 day grace period triggered an *automatic* Policy lapse -- without any requirement of a lapse notice being sent.

Pennsylvania law supports National Life's position that a lapse notice was not required where, as here, the Policy imposed no duty to provide a notice. In fact, a Pennsylvania Court dismissed a claim similar to Mrs. Drake's at the preliminary objection stage in *Williams v. Gillott,* 2011 WL 10619020 (Sept. 21, 2011 Centre Cty. Ct. Com. Pl.), *aff'd,* 60 A.3d 843 (Pa. Super. Ct. 2012), *appeal denied,* 63 A.3d 779 (Pa. 2013).

5

*Williams* involved an individual life insurance policy with terms similar to those found in the Policy here. Like Mrs. Drake, the plaintiff in *Williams* argued that she was entitled to notice before the policy lapsed for non-payment of premiums. After examining the policy terms and finding no provision requiring such a notice, the *Williams* Court rejected the claim, holding:

> The Plaintiff can find no refuge in the insurance contract, which does not obligate the insurance company to notify the beneficiaries or the insured that premiums are due, or the amount of that premium, or that the policy has or is about to lapse

2011 WL 10619020. *Williams* was later affirmed by the Superior Court. 60 A.3d 843.

The result in *Williams* makes sense in the context of Pennsylvania contract law. Indeed, to state a *prima facie* claim for breach of contract, Mrs. Drake must allege facts establishing: "(1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) *a breach of duty imposed by the contract*; and (3) damages resulting from that breach of duty." *Boyd v. Rockwood Area Sch. Dist.*, 907 A.2d 1157, 1165 (Pa. Commw. 2006) (emphasis added; citation omitted). Absent a "duty imposed by the contract" to provide a lapse notice to the beneficiary and the insured's agent, Mrs. Drake has no viable breach of contract claim.

### C. Mrs. Drake Fails To State A Claim For Bad Faith.

To prove bad faith, Mrs. Drake must prove that National Life (1) did not have a reasonable basis for its actions *and* (2) knew of or recklessly disregarded the alleged lack of a reasonable basis for its actions. *Keefe v. Prudential Property and Casualty Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000). The Court must consider whether National Life acted "through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Id.* Further, Mrs. Drake must prove bad faith by *clear and convincing evidence. E.g., Klinger v. State Farm Mutual Automobile Inc. Co.*, 115 F.3d 230 (3d Cir. 1997). Here, Mrs. Drake cannot state a viable bad faith claim for four reasons.

6

First, National Life's denial of benefits under the Policy does not support a viable bad faith claim because there was no existing contractual relationship when benefits were denied. As one court succinctly explained: "[I]n order to state a claim for bad faith, there must be a contractual relationship between the parties." *Smith v. Lincoln Ben. Life Co.*, 2009 WL 78990, at *19 (W.D. Pa. Mar. 23, 2009), *aff'd*, 395 F. App'x 821 (3d Cir. 2010). National Life did not act in bad faith by denying benefits under a life insurance policy that has lapsed. *Id.*

Second, Mrs. Drake has no viable bad faith claim because the denial benefits was correct (or at least reasonable, even if incorrect) under the Policy. *Kidd v. Prudential Ins. Co. of Am.*, 2008 WL 163055, at *17 (M.D. Pa. Jan. 15, 2008); *McCrink v. Peoples Benefit Life Ins. Co.*, 2005 WL 730688, at *11 (E.D. Pa. Mar. 29, 2005) (reasonable but incorrect policy interpretation is not bad faith). Here, the denial was correct under the Policy which states: "We will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured died *while this policy was in force*." [Exh. A at Policy – 9 (Emphasis added)].

Third, National Life's so-called failure to send Mrs. Drake or the agent lapse notices does not constitute bad faith because the Policy imposed no duty to send lapse notices (much less to the beneficiary and the insured's agent). There was, therefore, there was no violation of the Policy that could give rise to a bad faith claim. *Kidd*, 2008 WL 163055 at *17; *McCrink*, 2005 WL 730688 at *11. Again, the reasonableness of National Life's interpretation is confirmed by the Policy itself (which did not require lapse notices) and by applicable law. *Williams v. Gillott*, 2011 WL 10619020 (Sept. 21, 2011 Centre Cty. Ct. Com. Pl.), *aff'd*, 60 A.3d 843 (Pa. Super. Ct. 2012), *appeal denied*, 63 A.3d 779 (Pa. 2013).

Finally, Mrs. Drake's allegations about the alleged duty to provide lapse notices fail to state a claim for bad faith because they are unrelated to the handling of a claim for benefits under

7

the policy. Under Third Circuit law, "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004).

Accordingly, courts have rejected bad faith claims based on conduct, such charging excessive premiums, unrelated to the denial of a claim. *Id.* at 506; *Liberty Mut. Ins. Co. v. Muskin Leisure Prod., Inc.*, 2006 WL 2642387, at *3 (M.D. Pa. Sept. 13, 2006). One notable example is *Mony Life Ins. Co. v. Snyder*, 2016 WL 3418493 (M.D. Pa. June 22, 2016), where a life insurance company was accused of improperly transferring ownership of a policy from the insured to his former spouse. The Court dismissed the bad faith claim because the conduct at issue did not relate to a denial of benefits. 2016 WL 3418493, at *4 ("As judicially construed, section 8371 covers bad faith in denial of benefits, not bad faith in the transfer of ownership in a policy.").

Mrs. Drake has no viable bad faith claim for all of the many reasons outlined above; therefore, Count I of the Complaint should be dismissed with prejudice.

### D. Mrs. Drake Fails To State A Claim For Breach Of Fiduciary Duty.

Pennsylvania law is clear that an insurer does not owe a fiduciary duty to its insured except in certain very limited circumstances (*i.e.*, in the "third party" context) that are not present here. *See Keefe v. Prudential Prop. and Cas. Ins. Co.*, 203 F.3d 218, 227-28 (3d Cir. 2000) ("Under Pennsylvania law, a fiduciary duty higher than the duty of good faith and fair dealing does not arise out [of] an insurance contract *until an insurer asserts a stated right under the policy to handle all claims asserted against the insured.*" (Emphasis added)); *Bare v. State Auto Group*, 2013 WL 3878606 (E.D. Pa. July 26, 2013); *Tubman v. USAA Cas. Ins. Co.*, 943 F.Supp.2d 525 (E.D. Pa. 2013).

8

A life insurance company therefore owes no fiduciary duty to a policy beneficiary. *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.3d 1174, 1174 (3d Cir. 1985); *Hoffman v. Nw. Mut. Life Ins. Co.*, 2013 WL 3973700, at *4 (W.D. Pa. July 31, 2013); *Levin v. Transamerica Occidental Life Ins. Co.*, 2008 WL 3895897, at *5 (E.D. Pa. Aug. 21, 2008). Instead, the relationship is solely a matter of contract. *Benefit Tr. Life Ins. Co.*, 776 F.3d at 1174.

Here, any duty National Life owed to Mrs. Drake as the Policy beneficiary arose as a matter of the contract (*i.e.*, the Policy) between National Life and Mr. Drake. Because National Life's obligations to Mrs. Drake were purely contractual, National Life owned no fiduciary duty to Mrs. Drake and her claim for breach of fiduciary duty should be dismissed with prejudice.

### E. Mrs. Drake's Negligence Claim Is Barred By The Gist Of The Action Doctrine And The Economic Loss Doctrine.

The gist of the action doctrine bars tort claims when: (1) the tort claim arises solely from the contractual relationship with the parties; (2) the alleged duties breached were grounded in the contract itself; (3) any liability stems from the contract; and (4) the tort claim essentially duplicates the breach of contract claim. *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014); *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 533 (M.D. Pa. 2007).

Mrs. Drake's negligence claim arises from the contract (*i.e.*, the Policy) between Mr. Drake and National Life. Specifically, Mrs. Drake claims that under the Policy, National owed her certain duties. The duties National allegedly breached according to Mrs. Drake are notice of the "overdue payment and cancellation of the policy." [Complaint ¶ 43].

Regardless of the "merits" of Mrs. Drake's contractual theories, her negligence claim is duplicative of her breach of contract claim. The negligence claim is therefore barred by the gist of the action doctrine.

Similarly, under the economic loss doctrine, no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage. *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 936 A.2d 111, 115, n.7 (Pa. Super. Ct. 2007). Here, Mrs. Drake claims she was entitled to notice of overdue payment and cancellation of the Policy, and the relief she seeks -- the Death Benefits that would have been paid had the Policy been in force -- is purely economic. Absent physical injury or property damage, Mrs. Drake's negligence claim is barred by the economic loss doctrine. *Id.*

## IV. CONCLUSION

For the reasons set forth above, Mrs. Drake's Complaint should be dismissed with prejudice.

Dated: September 11, 2017      **STEVENS & LEE, P.C.**

By: /s/ E. Thomas Henefer
    E. Thomas Henefer
    Attorney I.D. No. 55773
    111 North Sixth Street
    P.O. Box 679
    Reading, PA 19603
    Telephone: (610) 478-2000
    Facsimile: (610) 988-0803
    E-Mail: eth@stevenslee.com

Attorneys for Defendant National Life
Insurance Company

# CERTIFICATE OF SERVICE

E. Thomas Henefer hereby certifies that on this date the foregoing *Motion*, *Brief* and *Proposed Order* were filed electronically on the CM/ECF website for the District Court for the Eastern District of Pennsylvania and are available for viewing by all electronic filers through the court's CM/ECF system. I further certify that true and correct copies of the foregoing *Motion*, *Brief* and *Proposed Order* were mailed on this date to counsel listed below by first class mail, postage pre-paid addressed as follows:

                        Matthew B. Weisberg, Esq.
                              Weisberg Law
                             7 South Morton Ave.
                              Morton, PA 19070

                              Gary Schafkopf, Esq.
                      Hopkins Schafkopf Law, LLC
                                11 Bala Ave.
                            Bala Cynwyd, PA 19004

                                                            /s/ E. Thomas Henefer
                                                           E. Thomas Henefer

Date: September 11, 2017

SL1 1482842v1 101789.00016