## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH DRAKE | : |
| | : |
| Plaintiff, | : |
| | : C.A. No. 2:17-cv-03170-JS |
| v. | : |
| | : |
| NATIONAL LIFE INSURANCE | : |
| COMPANY | : |
| | : |
| Defendant. | : |

## DEFENDANT NATIONAL LIFE INSURANCE COMPANY'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

Dated:  October 16, 2017

**STEVENS & LEE, P.C.**
E. Thomas Henefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, PA  19603
Telephone: (610) 478-2000
Facsimile: (610) 988-0803
E-Mail: eth@stevenslee.com

Attorneys for Defendant National Life
Insurance Company

## I.   INTRODUCTION

After her late husband Eric E. Drake died in August 2016, Judith Drake sought life insurance benefits under a life insurance policy (the "Policy") issued by National Life Insurance Company.  National Life denied the claim because Mr. Drake's Policy lapsed in late 2015, after he failed to pay the required premiums and later failed to reinstate the Policy despite notice of its lapse.  As a result, the Policy was not in force when Mr. Drake died and no benefits were due.

Without disputing that National Life sent Mr. Drake premium reminder and lapse notices, Mrs. Drake offers a novel theory, namely, that National Life owed a duty to send lapse notices to the Policy *beneficiary* (Mrs. Drake) and the Drakes' *agent*, Steven Fishman.  Based on the alleged "failure" to send notices to Mrs. Drake and Mr. Fishman, Mrs. Drake filed a Complaint asserting claims for bad faith, negligence, breach of contract, and breach of fiduciary duty.

National Life moved to dismiss the Complaint.  Mrs. Drake responded with an Amended Complaint, asserting a single claim styled as "Estoppel / Breach of Contract / Quasi-Contract." The Amended Complaint, however, did not (and cannot) cure the deficiencies in Mrs. Drake's claim.  There was no breach of contract because the Policy did not require National Life to send a lapse notice to anyone -- even the Policy owner (Mr. Drake), much less the beneficiary or the insured's agent.  Nor is there any basis to plead estoppel or "quasi-contract."  The Amended Complaint therefore fails to state a claim on which relief can be granted.

## II.   STATEMENT OF FACTS

### A.   Facts Alleged In The Amended Complaint.

This Motion should be decided on the factual allegations in the Amended Complaint and certain documents attached to and/or expressly referenced in the Amended Complaint.  Those

documents consist of (1) the Policy (attached as Exhibit A); and (2) the premium reminder and lapse notices National Life sent Mr. Drake which are attached to the Complaint.[1]

Mr. Drake, who purchased the Policy in October 2006, was the "owner" of the Policy and Mrs. Drake was the named beneficiary. [Docket No. 9, at ¶ 5; Exhibit A at Policy – 2, 6, 18-19].[2] Mr. Drake kept the Policy in force until the Fall of 2015; however, he failed to pay the premiums due on October 1, 2015. [Docket No. 9 at ¶ 9 and p. 19 and 14]. Mr. Drake was notified that the Policy's 31 day "grace period" for paying overdue premiums had expired, that the policy had lapsed, and that he could reinstate the Policy (without paying interest or providing evidence in insurability) by paying the premiums by December 2, 2015. [Docket No. 9 at p. 14].

Then, on December 11, 2015, Mr. Drake was notified that the Policy had lapsed and was cancelled without value. [Docket No. 9 at p. 8]. Accordingly, when Mr. Drake died on August 16, 2016, the Policy had not been in force for nearly a year.

**B. Pertinent Policy Provisions.**

The Policy, together with the Policy application, was the "entire contract" between National Life and Mr. Drake. [Exh. A at Policy – 6]. Contrary to Mrs. Drake's claim, these documents imposed no duty on National Life to send notices to the beneficiary (Mrs. Drake) or the agent (Mr. Fishman) about unpaid premiums or Policy lapse. [Docket No. 8 at ¶¶ 12, 14].

Instead, the Policy imposed a duty on Mr. Drake to pay timely premiums to keep the Policy in force. As the Policy owner, Mr. Drake agreed to make quarterly payments of $894.04

---

[1]    The Court may consider the Policy, which is referenced in the Complaint, when deciding a Rule 12(b)(6) motion. *E.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Policy has been redacted under Fed. R. Civ. P. 5.2. For ease of reference, Exhibit A has also been Bates numbered pages "Policy - 1 through 32."

[2]    The application, which is part of the "entire contract" between National Life and Mr. Drake [Exh. A at Policy – 6], provides that the "Owner" is the proposed insured (*i.e.*, Mr. Drake) unless another owner is specifically designated in the application. [Exh. A at Policy – 18-19]. No other individual was designated as the Owner.

to keep the Policy in force. [Exh. A at Policy – 2]. Premiums were "due at the end of the interval of time for which the preceding premium was paid."

The Policy imposed no obligation on National Life to send a notice of unpaid premiums. Instead, the Policy provided for an *automatic* lapse if premiums were not paid timely:

> **Lapse and Grace Period.** If any premium due is not paid on or before the day it is due, this policy shall lapse as of such date. All our liability shall then cease. However, a grace period of thirty-one days from the due date, during which the insurance shall stay in force, shall be allowed for the payment of every premium due except the first.

[Exh. A at Policy – 6].[3]

The Policy therefore lapsed automatically as of November 1, 2015 when the October 1, 2015 premiums were not paid within 31 days of the due date. [Exh. A at Policy – 6; Docket No. 9 at ¶ 9 and pp. 19, 14 and 8]. There was no separate requirement to send premium or lapse notices before the Policy lapsed (although National Life in fact sent such notices to Mr. Drake). [Docket No. 9 at pp. 14 and 8]. More importantly, the Policy imposed no duty on National Life to provide lapse notices to the beneficiary (Mrs. Drake) or the agent (Mr. Fishman).

## III. ARGUMENT

### A.   Standard Of Review

The standards applicable to a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6) are well-settled.  Mrs. Drake "must allege facts that 'raise a right to relief above the speculative level . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere "conclusory" allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  She must allege "more

---

[3]   The Policy referred to sending premium notices only in one narrow situation, where the premium amount was adjusted. [Exh. A at Policy – 6]. And even in this narrow situation, which is not relevant here, National Life was directed to send premium notices to the owner (*i.e.*, Mr. Drake), not to the beneficiary or agent. [Exh. A at Policy – 6 and 18, ¶ 12].

3

than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 & n.3. Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" satisfy the pleading standard. *Iqbal*, 556 U.S. at 677-678. Further, the Court should "disregard any legal conclusions" in reviewing the Complaint. *E.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

Mrs. Drake must also plead facts showing a "plausible entitlement to relief." *Twombly*, 550 U.S. at 557-562. There must be "facial plausibility." *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 556)). Facial plausibility exists only if the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557)). And, critically, a Court's assessment of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 677-678. Thus, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

**B.    The Amended Complaint Fails To State A Claim On Which Relief Can Be Granted**

The Amended Complaint's sole count does not clearly identify the cause of action Mrs. Drake intends to assert. Instead, it is styled as a claim for "Estoppel / Breach of Contract / Quasi-Contract." As outlined below, Mrs. Drake's reference to "estoppel" apparently refers to promissory estoppel which is a form of "quasi-contract" claim. In any event, Mrs. Drake has no viable claim, either for breach of contract or promissory estoppel for a variety of reasons.

4

### 1.   Mrs. Drake Fails To State A Claim For Breach Of Contract.

Mrs. Drake's breach of contract claim fails for two primary reasons.

First, Mrs. Drake cannot state a claim for breach of contract because the Policy was not in force when Mr. Drake died. *Smith v. Lincoln Ben. Life Co.*, 2009 WL 78990, at *19, *21 (W.D. Pa. Mar. 23, 2009), *aff'd*, 395 F. App'x 821 (3d Cir. 2010); *Kidd v. Prudential Ins. Co. of Am.*, 2008 WL 163055, at *17 (M.D. Pa. Jan. 15, 2008). The Policy lapsed due to Mr. Drake's failure to pay the October 1, 2015 premiums when due or within the 31 day grace period.

Further, death benefits were payable only if the insured died "while this policy was in force." [Exh. A at Policy – 9 ("Death Benefit")]. Mrs. Drake therefore has no viable breach of contract claim. *Smith*, 2009 WL 78990, at *19; *Kidd*, 2008 WL 163055, at *17.

Second, Mrs. Drake's theory that National Life breached the contract by "failing" to send lapse notices to her and Mr. Fishman fails because no such duty arose under the Policy terms. As outlined above, the Policy's provisions on premiums and lapse were clear and unambiguous: (1) premiums were due on specific dates based on specific payment intervals, and (2) the failure to pay premiums when due or within the 31 day grace period triggered an *automatic* Policy lapse -- without any requirement of a lapse notice being sent.

Pennsylvania law confirms that a lapse notice was not required where, as here, the Policy imposed no duty to provide notice. In fact, a Pennsylvania Court dismissed a claim similar to Mrs. Drake's at the preliminary objection stage in *Williams v. Gillott*, 2011 WL 10619020 (Sept. 21, 2011 Centre Cty. Ct. Com. Pl.), *aff'd*, 60 A.3d 843 (Pa. Super. Ct. 2012), *appeal denied*, 63 A.3d 779 (Pa. 2013).

*Williams* involved an individual life insurance policy with terms similar to those found in the Policy here. Like Mrs. Drake, the plaintiff in *Williams* argued that she was entitled to notice

5

before the policy lapsed for non-payment of premiums. After examining the policy terms and

finding no provision requiring such a notice, the *Williams* Court rejected the claim, holding:

> The Plaintiff can find no refuge in the insurance contract, which
> does not obligate the insurance company to notify the beneficiaries
> or the insured that premiums are due, or the amount of that
> premium, or that the policy has or is about to lapse

2011 WL 10619020. *Williams* was later affirmed by the Superior Court. 60 A.3d 843.

*Williams* is consistent with Pennsylvania contract law. To state a *prima facie* claim for

breach of contract, Mrs. Drake must allege facts establishing: "(1) the existence of a contract

between the plaintiff and defendant, including its essential terms; (2) *a breach of duty imposed

by the contract*; and (3) damages resulting from that breach of duty." *Boyd v. Rockwood Area

Sch. Dist.*, 907 A.2d 1157, 1165 (Pa. Commw. 2006) (emphasis added; citation omitted). Absent

a "duty imposed by the contract" to provide a lapse notice to the beneficiary and the insured's

agent, Mrs. Drake has no viable breach of contract claim.

### 2. Mrs. Drake Cannot Assert A Claim For "Equitable Estoppel"

The Amended Complaint does not clearly state whether Mrs. Drake intends to assert a

claim for promissory estoppel or to invoke equitable estoppel. Equitable estoppel, however, is

not a separate cause of action; instead, it is an affirmative defense. *Carlson v. Arnot-Ogden

Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990); *Zamos v. McNeil-PPC, Inc.*, 2017 WL 68577 at

*6 (E.D. Pa. Jan. 5, 2017). Therefore, to the extent that the Amended Complaint is intended to

assert a "claim" for equitable estoppel, it must be dismissed.

Moreover, the Amended Complaint does not plead sufficient facts to invoke equitable

estoppel. Equitable estoppel requires both "inducement and justifiable reliance on that

inducement." *Norfolk S. Ry. Co. v. G.W.S.I., Inc.*, 2017 WL 3602478, at *3 (E.D. Pa. Aug. 22,

2017); *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). To invoke equitable

6

estoppel, Mrs. Drake must plead facts sufficient to plausibly show that National Life intentionally or negligently misrepresented a material fact with knowledge (or reason to know) that Mrs. Drake would justifiably rely on the misrepresentation. *Norfolk S. Ry. Co.*, 2017 WL 3602478, at *3.

The Amended Complaint does not allege any misrepresentation by National Life. Instead, it alleges that National Life sent premium notices to Mr. Drake and that neither Mrs. Drake nor Fishman saw the notices (and therefore did not detrimentally rely on them in any sense). Absent plausible factual allegations of misrepresentation and justifiable reliance, Mrs. Drake cannot invoke equitable estoppel which, in any event, is not a cause of action.

### 3. The Amended Complaint Fails To State A Claim For Promissory Estoppel

To plead a promissory estoppel claim, Mrs. Drake must plausibly allege: (1) that National Life made a promise that it reasonably expected to induce action or forbearance by Mrs. Drake, (2) Mrs. Drake was induced by the promise into acting (or refrained from acting), and (3) that injustice can only be avoided by enforcing National Life's alleged promise. *Carlson*, 918 F.2d at 416; *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). The Amended Complaint fails to state a claim for promissory estoppel (or quasi-contract) for two reasons.

First, the Amended Complaint does not plead sufficient facts (plausible or otherwise) to state a claim for promissory estoppel. There is no alleged promise by National Life to Mrs. Drake, nor is there any allegation that she acted or refrained from acting in reliance on a promise by National Life. Instead, she alleges only that National Life sent Mr. Drake notices about unpaid premiums and the Policy's lapse and that neither Mrs. Drake nor Fishman saw the notices. These alleged facts are insufficient to state a claim for promissory estoppel. *Id.*

7

Second, promissory estoppel is a form of quasi-contractual remedy. *STI Oilfield Servs., Inc. v. Access Midstream Partners*, 2014 WL 4716618 at *5 (M.D. Pa. Sept. 22, 2014); *Nat'l Educ. Fin. Servs., Inc. v. U.S. Bank, Nat. Ass'n*, 2013 WL 6228979 at *7 (E.D. Pa. Dec. 2, 2013). As such, it cannot be invoked where the relationship between the parties was defined by a valid contract. *Carlson*, 918 F.2d at 416; *STI Oilfield Servs., Inc.*, 2014 WL 4716618, at *5.

Notably, the fact that the Policy lapsed does not mean that promissory estoppel can be pursued. Instead, because Mr. Drake and National Life had entered a binding contract (*i.e.*, the Policy), promissory estoppel is unavailable even though the Policy lapsed before the lawsuit was filed. *Nat'l Educ. Fin. Servs., Inc.*, 2013 WL 6228979 at *7 (dismissing quasi-contract claim for promissory estoppel because the parties' relationship was governed by a contract, even though the contract was terminated before the lawsuit was filed).

## IV. CONCLUSION

For the reasons set forth above, Mrs. Drake's Amended Complaint should be dismissed with prejudice.

Dated:  October 16, 2017

**STEVENS & LEE, P.C.**

By: /s/ E. Thomas Henefer
E. Thomas Henefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, PA  19603
Telephone: (610) 478-2000
Facsimile: (610) 988-0803
E-Mail: eth@stevenslee.com

Attorneys for Defendant National Life
Insurance Company

8

# EXHIBIT A

A Mutual Company Established 1850

# National Life Insurance Company

One National Life Drive, Montpelier, Vermont 05604

(802) 229-3333

We, NATIONAL LIFE INSURANCE COMPANY, agree to pay the Death Benefit to the Beneficiary, subject to the terms of this policy, when we receive at our Home Office due proof that the Insured died while this policy was in force.

The data and the terms on this and all following pages are part of this policy.

Signed for NATIONAL LIFE INSURANCE COMPANY at Montpelier, Vermont, as of the Date of Issue, by

Chairman of the Board
and
Chief Executive Officer

Secretary
M. A. Couture
Registrar

COPY ONLY
NOT A CONTRACT OF INSURANCE

---

**Term policy with premium adjustment provision.** Premiums to be paid for years shown in Data Section or until prior death of Insured. Death Benefit to be paid at death. Participating.

Ten Day Right to Review Policy. This policy, at any time within ten days after its receipt by the Owner, may be returned in person or by mail to us or to the agent through whom it was bought. Upon such return, the policy will be deemed void as of its Date of Issue. We will then refund any premium paid.

**NATIONAL LIFE**

28-86

Cat. No. 41472

119UHS                        DATA SECTION

NUMBER:  2398215                    DATE OF ISSUE:  OCTOBER 01, 2006

INSURED:  ERIC E DRAKE                    SUM INSURED:    $500,000

ISSUE AGE:  53                    FINAL EXPIRY DATE:  OCTOBER 01, 2048
                                 FINAL EXCHANGE DATE:  OCTOBER 01, 2023
        TEN YEAR LEVEL PREMIUM TERM WITH TEN YEAR PREMIUM GUARANTEE

OWNER:  AS STATED IN THE APPLICATION
        UNLESS LATER CHANGED

BENEFICIARY IS AS STATED IN THE APPLICATION UNLESS LATER CHANGED.

| BENEFIT | AMOUNT | ANNUAL PREMIUM* | PAYABLE FOR |
|---------|--------|-----------------|-------------|
| RENEWABLE TERM INSURANCE | $500,000 | $3440.00 | 10 YEARS |
| IMMINENT DEATH ACCELERATED | | | |
|   BENEFITS RIDER 4 | SEE RIDER | NONE | N/A |
| CHRONIC ILLNESS ACCELERATED | | | |
|   BENEFITS RIDER 5 | SEE RIDER | NONE | N/A |

THE FIRST PREMIUM FOR A  3 MONTH INTERVAL IS      $894.40*.

*INCLUDES  $75.00 PER YEAR POLICY FEE.

THIS POLICY IS IN A STANDARD PREMIUM CLASS.

THE INSURED HAS BEEN CLASSIFIED A PREFERRED SMOKER.

THE EXCHANGE INTEREST RATE IS  8.0% COMPOUNDED PER YEAR.

SEE NEXT PAGE FOR ALL POLICY YEARS.

                        DATA SECTION
GL10        2398215     FIRST  OF FOUR PAGES

COPY ONLY
NOT A CONTRACT OF INSURANCE

```
                        PRINTED - 10/17/06 22:06:10
           DATA SECTION

           SCHEDULE OF GUARANTEED MAXIMUM
              ANNUAL PREMIUMS PAYABLE*
              -------------------------

  AS OF
  OCTO1
  YEAR                      TOTAL
  -----                     -----

2006-2015                 $3440.00
   2016                    36075.00
   2017                    39695.00
   2018                    43640.00
   2019                    47775.00
   2020                    52140.00
   2021                    56670.00
   2022                    61520.00
   2023                    66905.00
   2024                    72910.00

   2025                    79760.00
   2026                    87565.00
   2027                    96125.00
   2028                   105680.00
   2029                   115635.00
   2030                   125935.00
   2031                   136120.00
   2032                   146790.00
   2033                   158315.00
   2034                   170590.00

   2035                   184345.00
   2036                   199735.00
   2037                   216215.00
   2038                   233265.00
   2039                   250340.00
   2040                   267180.00
   2041                   285605.00
   2042                   304435.00
   2043                   323350.00
   2044                   342935.00

   2045                   364055.00
   2046                   391680.00
   2047                   428005.00
```

NOT A CONTRACT OF INSURANCE

```
                         DATA SECTION
 GL1Q      2398215       SECOND  OF FOUR PAGES
```

PRINTED - 10/17/06 22:06:10

DATA SECTION

SCHEDULE OF GUARANTEED MAXIMUM
ANNUAL PREMIUMS PAYABLE*
-----------------------------

PREMIUM ADJUSTMENT PROVISION

WE WILL DETERMINE THE PREMIUMS FOR THE RENEWABLE TERM INSURANCE ON YOUR
POLICY EACH YEAR.  THESE PREMIUMS WILL NOT EXCEED THOSE SHOWN ABOVE, NOR
WILL THEY BE CHANGED MORE THAN ONCE PER YEAR.  WE WILL NOTIFY YOU OF THE
PREMIUM BEFORE THE START OF EACH RENEWAL YEAR.  ANY CHANGES IN PREMIUM
WILL BE MADE ON A CLASS BASIS WITHOUT REGARD TO THE HEALTH OF THE INSURED.
SUCH CHANGES WILL BE FILED WITH THE INSURANCE SUPERVISORY OFFICE OF THE
STATE WHICH GOVERNS YOUR POLICY.



*INCLUDES  $75.00 PER YEAR POLICY FEE.

                    DATA SECTION
GL10     2398215    THIRD  OF FOUR PAGES

PRINTED - 10/17/06 22:06:10

DATA SECTION

PREMIUM PAYMENT OPTIONS AND ADDITIONAL COSTS ASSOCIATED WITH PAYING
PREMIUMS MORE FREQUENTLY THAN ANNUALLY:  YOU MAY PAY PREMIUMS ONCE
A YEAR (ANNUALLY), TWICE A YEAR (SEMI-ANNUALLY), FOUR TIMES A YEAR
(QUARTERLY), OR TWELVE TIMES A YEAR (MONTHLY).

YOUR YEARLY COST WILL BE HIGHER IF YOU CHOOSE TO PAY PREMIUMS MORE
FREQUENTLY THAN ANNUALLY.  FOR EXAMPLE, THE ADDITIONAL AMOUNT YOU
WILL PAY IN THE FIRST YEAR IS AS FOLLOWS:

| PREMIUM<br>FREQUENCY | NUMBER OF<br>PAYMENTS<br>PER YEAR | AMOUNT<br>OF EACH<br>PREMIUM<br>PAYMENT | TOTAL<br>PREMIUM<br>PER YEAR | AMOUNT YOU WILL<br>PAY EACH YEAR<br>IN ADDITION TO THE<br>ANNUAL PREMIUM |
|---|---|---|---|---|
| ANNUAL | 1 | $3440.00 | $3440.00 | $0.00 |
| SEMI-ANNUAL | 2 | $1754.40 | $3508.80 | $68.80 |
| QUARTERLY | 4 | $894.40 | $3577.60 | $137.60 |
| MONTHLY<br>(EFT/LIST BILL) | 12 | $302.72 | $3632.64 | $192.64 |
| MONTHLY<br>(NON-EFT) | 12 | $309.60 | $3715.20 | $275.20 |

THIS TABLE ILLUSTRATES THE ADDITIONAL AMOUNTS THAT ARE REQUIRED IN
THE FIRST YEAR.  ADDITIONAL AMOUNTS WILL BE DUE IN FUTURE YEARS IF
PREMIUMS ARE PAID MORE FREQUENTLY THAN ANNUALLY AND MAY VARY FROM
THE ABOVE EXAMPLE.  CONTACT YOUR AGENT OR THE COMPANY TO DETERMINE
THE ADDITIONAL AMOUNT DUE IN ANY GIVEN YEAR IF YOU CHOOSE TO PAY
PREMIUMS MORE FREQUENTLY THAN ANNUALLY.

COPY ONLY
NOT A CONTRACT OF INSURANCE

DATA SECTION

GL1D       2398215       FOURTH  OF FOUR PAGES

# GENERAL TERMS
# OF THIS POLICY

**Consideration.** This policy is issued in consideration of the application and payment of premiums as shown in the Data Section.

**Entire Contract.** This policy and a copy of the application which is attached at issue are the entire contract between the parties on the Date of Issue. Any change of this contract must be written and may be made only by one of our authorized officers or registrars. We will send the Owner a copy of any application for a change which we approve. It and any additional Data Section shall become part of this contract on the effective date of such change.

**Policy Date.** The Policy Date is the Date of Issue, unless otherwise stated in the Data Section.

**Policy Months, Years and Anniversaries.** Policy months, years and anniversaries shall be measured from the Policy Date.

Each policy month shall begin on the same day of the month as the Policy Date or on the last day of any month having no such day.

**Misstatement of Age or Sex.** The age of the Insured on the Insured's birthday nearest to the Policy Date is the Issue Age shown in the Data Section. It is based on the date of birth shown in the application. If the age or sex of the Insured has been misstated, any benefits under this policy shall be such as the premiums paid would have bought using the correct age and sex.

**Attained Age.** The Attained Age of the Insured on any date is the Issue Age shown in the Data Section plus the number of policy years and months which have passed since that date.

**Payment of Benefits.** We will pay all benefits under this policy at our Home Office. Before payment of any Death Benefit we may investigate the death.

# INCONTESTABILITY
# AND REPRESENTATIONS

**Incontestability.** After this policy has been in force during the life of the Insured for two years from the Date of Issue, we will not contest it except for failure to pay premiums.

**Representations.** All statements made by or for the Insured shall be deemed representations and not warranties. No such statement shall avoid this policy or be used in defense of a claim upon it, unless such statement is in the application.

# PREMIUMS

**Payment of Premiums.** The First Premium and its interval are shown in the Data Section. It is due on the Policy Date. Each later premium is due at the end of the interval of time for which the preceding premium was paid.

Premiums after the first may be paid for 12-, 6-, or 3-month intervals at the rates currently in effect or in any manner agreed to by us. These shall be the rates in effect on the later of:

1. the Date of Issue, or

2. the date of the most recent premium change endorsement.

On written request filed at our Home Office, the Owner may make a change from one interval to another.

The first premium may be paid to us either through our duly authorized agent in exchange for a receipt signed by that agent or at our Home Office. All later premiums must be paid at our Home Office.

We will incur no liability if no premium is paid.

**Premium Adjustment.** We will determine the premiums for the renewable term insurance on this policy each year. These premiums will not exceed those shown in the Data Section, nor will they be changed more than once per year. We will notify the Owner of the premium before the start of each renewal year.

Any changes in premium shall be made on a class basis without regard to the health or occupation of the Insured. Any premium change shall be on a uniform basis for all insureds of the same Issue Age and risk classification whose policies have been in force the same length of time. Any such change shall be based on changes in future expectations for items such as investment earnings, mortality, persistency and expenses. Any premium change made on this policy shall have no effect on any riders attached to the policy. Such changes shall be made in accordance with the procedures required by the insurance regulatory body which governs this policy.

**Renewal.** This policy expires on each policy anniversary. Upon each expiration, if all premiums for the expired term have been paid, the policy shall be renewed for a one year term upon payment of the renewal premium within thirty-one days of expiration.

**Lapse and Grace Period.** If any premium due is not paid on or before the day it is due, this policy shall lapse as of such date. All our liability shall then cease. However, a grace period of thirty-one days from the due date, during which the insurance shall stay in force, shall be allowed for the payment of every premium due except the first.

**Automatic Payment of Premium - from Dividends Held.** Any premium still unpaid at the end of the grace period less any dividend being applied toward payment of such premium shall be paid by withdrawing dividends held subject to the following terms.

YRT-A PA                                    -1-

1. The dividends held, together with any dividend then being applied, must be sufficient to pay the full premium.

2. The Owner must file at our Home Office a written request for Automatic Payment of Premium. No premium due prior to our receipt of the request shall be paid under this section. No premium due after the request is withdrawn shall be paid under this section.

# EXCHANGE

**Issue Age Exchange.** Upon written request received at our Home Office, this policy may be exchanged for a whole life or limited payment life policy, but not for a flexible premium life policy, on the life of the Insured for the same Sum Insured without proof that the Insured is insurable if:

1. this policy is in force; and

2. the exchange is made within five years from the Date of Issue of this policy and prior to the Final Exchange Date set forth in the Data Section.

The new policy shall:

1. have the same Date of Issue as this policy; and

2. be on a form in use by us on the Date of Issue of this policy; and

3. be at the premium rate in effect for the Insured's age on the Date of Issue of this policy. If this policy is in an extra premium class on the date of exchange, the new policy shall be issued in the same extra premium class.

The cost of such exchange shall be the sum of the amounts calculated by the following steps as of the Date of Issue and as of each policy anniversary prior to the exchange:

1. the annual premium which would have been due for the new policy on such date, reduced by any dividend which would have been credited under the new policy on such date, if it had been issued on the Date of Issue of this policy; less

2. the annual premium for this policy on such date less any dividend credited under this policy on such date; plus

3. interest on the excess of the amount calculated in Step 1 over the amount deducted in Step 2, from the date such premiums would have been due, to the date of exchange, at the Exchange Interest Rate stated in the Data Section.

We may require that this policy be returned to us.

**Attained Age Exchange.** Upon written request received at our Home Office, this policy may be exchanged for a whole life policy, limited payment life policy or a flexible premium life policy, on the life of the Insured, with a Sum Insured or Face Amount equal to this policy's Sum Insured, without proof that the Insured is insurable if:

1. this policy is in force; and

2. the exchange is made prior to the Final Exchange Date set forth in the Data Section.

The new policy shall:

1. be on a form in use by us on the date of exchange; and

2. be at the premium rate in effect for the Insured's Attained Age on the date of exchange. If this policy is in an extra premium class on the date of exchange, the new policy shall be issued in the same extra premium class.

We may require that this policy be returned to us.

**Waiver of Premiums.** If, on the date of exchange, the Insured is totally disabled as defined in any waiver of premiums rider contained in this policy and either has been so disabled for at least two years or to the date the Insured reaches Attained Age 60, and

1. if an attained age exchange to a whole life policy is made:

    a. a waiver of premiums rider shall be added to the new policy, and

    b. payment of premiums on the new policy shall be waived, starting with the first premium due on or after the 121st consecutive day of total disability of the Insured, and continuing during the continuance of such disability; or

2. if an attained age exchange to a flexible premium life policy is made:

    a. a Rider for Waiver of Monthly Deductions shall be added to the new policy, and

    b. Covered Monthly Deductions on the new policy shall be waived, starting on the Monthly Policy Date on or next following the 121st consecutive day of total disability, and continuing during the continuance of such disability, provided that monthly costs for the new Rider for Waiver of Monthly Deductions were deducted on all Monthly Policy Dates through the 120th consecutive day of disability.

If, on the date of exchange, the Insured is not totally disabled as defined in any waiver of premiums rider contained in this policy, a waiver rider may be added to the new policy.

All waiver rider exchanges shall be subject to the following terms.

1. This policy must contain a waiver of premiums rider.

2. The exchange must be made only prior to the date the Insured reaches Attained Age 60.

3. Proof to our satisfaction that the Insured is insurable shall be required if the new policy is a limited payment life policy.

4. The waiver rider on the new policy shall be on a form in use by us on the date of exchange.

5. The waiver rider on the new policy shall be at the premium rate in effect for the Insured's Attained Age on the date of exchange.

COPY ONLY NOT OF INSURED

YRT-B                                   -2-

If the premium for any waiver of premiums rider contained in this policy is rated some multiple of the regular premium, the premium for any waiver rider added to any new policy shall be rated the same multiple.

**Accidental Death Benefit.** If, on the date of either an issue age or attained age exchange, an accidental death benefit rider is contained in this policy, a like rider may be added to the new policy, subject to the following terms.

1. The exchange must be made prior to the date the Insured reaches Attained Age 60.

2. The accidental death benefit rider on the new policy shall be on the form in use by us on the date of exchange.

3. The accidental death benefit rider on the new policy shall be at the premium rate in effect for the Insured's Attained Age on the date of exchange. If the premium for any accidental death benefit rider contained in this policy is rated some multiple of the regular premium, the premium for any accidental death benefit rider added to any new policy shall be rated the same multiple.

4. The amount of the accidental death benefit on the new policy shall not exceed the amount of the accidental death benefit on this policy.

**Options to buy Additional Insurance.** If, on the date of either an issue age or attained age exchange, a rider for options to buy additional insurance is contained in this policy, a like rider may be added to the new policy subject to the following terms.

1. The exchange must be made prior to the date the Insured reaches Attained Age 40.

2. The rider for options to buy additional insurance on the new policy shall be on the form in use by us on the date of exchange.

3. The rider for options to buy additional insurance on the new policy shall be at the premium rate in effect for the Insured's Attained Age on the date of exchange.

4. The option amount of the rider on the new policy shall not exceed the option amount of the rider on this policy.

# POLICY OWNERSHIP

**General Ownership Terms.** The Owner may:

1. exercise the rights under this policy; and

2. assign the policy; and

3. release or discharge the policy; and

4. enjoy the benefits under this policy.

These actions may be taken without the consent and against the interest of any Beneficiary and any contingent owner. If the Owner cannot change the Beneficiary, these actions may be taken only by the Owner and the Beneficiary jointly. These actions may be taken only while the Insured is alive.

**Assignments.** The interest of any Beneficiary whom the assignor can change and of any contingent owner shall be transferred to the assignee by the terms of any assignment. If the assignee acquires a right to proceeds, they shall be paid in one sum even though a payment option may be in effect at the time the assignment was signed. We are not responsible for the validity or effect of any assignment of this policy. We will not recognize any assignment until it has been filed at our Home Office.

# BENEFICIARY

**General Beneficiary Terms.** The Owner has the right to change the Beneficiary. If the Owner expressly waives this right, no change can be made. Unless later changed, the Beneficiary shall be as stated in the application. The interest of any Beneficiary dying before the Insured shall vest in the Owner unless otherwise stated.

If used, the term "children," of any person, shall include only lawful children born to or legally adopted by that person.

We may rely on an affidavit by any person who in our judgment knows the facts to identify any Beneficiary or payee not specified by name. All our liability shall cease when we pay on the basis of such affidavit.

**Change of Beneficiary.** If the Owner has the right, a new Beneficiary may be named from time to time during the life of the Insured by filing at our Home Office written notice in such form as we may require. When notice is received at our Home Office, the change shall take effect on the date the notice is signed whether or not the Insured is living at the time of receipt. We will not be liable for any payment we make before receipt of the written notice at our Home Office.

# DIVIDENDS

**Dividends.** We may credit this policy with shares, called dividends, from our divisible surplus. The dividends, if any, credited to this policy shall be set by us. However, it is expected that no dividends will be credited to this policy. The dividends may be used under one of the following options.

1. **Cash.** Dividends may be taken in cash.

2. **Applied.** Dividends may be applied toward payment of a premium due. If the balance of such premium is not paid, the dividend shall be left with us as dividends held.

3. **Dividends Held.** Dividends may be left with us. Such dividends and interest added to them are called dividends held. We will add interest each year on dividends held which have remained with us for a full policy year. The rate of interest will be set by us each year at not less than 4% per year. Any dividends held may be withdrawn at any time by the Owner alone.

YRT-C

-3-

Once chosen, a dividend option shall remain in effect until changed by the Owner. If a dividend option is not chosen, the dividend shall be left with us as dividends held.

## REINSTATEMENT

**Reinstatement.** If this policy has lapsed, upon request it may be reinstated within five years of the date it lapsed. However, it may not be reinstated after the Final Expiration Date. We will require proof to our satisfaction that the Insured is insurable. We will also require the payment of:

1. the premium for the period from the date of reinstatement to the next premium due date; plus

2. the lesser of:

   a. half of all premiums for the period from the date of lapse to the date of reinstatement; or

   b. the premiums for the one year period prior to the date of reinstatement.

## DEATH BENEFIT

**Death Benefit.**   The Death Benefit shall be:

1. the Sum Insured shown in the Data Section; plus

2. any remaining dividends held; plus

3. any dividend credited at the Insured's death; plus

4. the part of any premium paid for any period after the Insured's death; less

5. the part of any premium not paid for any period prior to the Insured's death.

We will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured died while this policy was in force. We will pay the Death Benefit in one sum unless a payment option is chosen. If the Death Benefit is paid in one sum, it shall be increased by interest from the date of the Insured's death to the date of payment. We will set the rate of interest at not less than 4% per year.

**Suicide Limitation.**   If the death of the Insured within two years from the Date of Issue results from suicide, while sane or insane, we will pay only a sum equal to the premiums paid less any dividends taken in cash or applied toward payment of premiums.

## PAYMENT OPTIONS

**Choice of Option.** Instead of payment in one sum, all or part of the proceeds may be placed under any payment option. Choice of an option may be made:

1. by the Owner if the Insured is living; or

2. by the Beneficiary if the Insured is not living and if no option is in effect.

Equivalent payments for 12-, 6-, 3-, or 1-month intervals may be chosen. The options are described in terms of monthly payments. We will quote the amount of the other payments on request.

In addition to the options stated in this policy, other options may be available.

**Withdrawals.** The right of withdrawal may be included in the choice of Options 1, 2, or 4.

1. Under Options 1 and 4 all or any part of the remaining value may be withdrawn at any time. Not more than four partial withdrawals may be made during any calendar year.

2. Under Option 2 the entire remaining value may be withdrawn at any time.

No withdrawals may be made under Options 3 or 5.

**Change of Payment Option.** The right to change options may be included in the choice of Options 1, 2, or 4. At the time of change the remaining value under the old option shall become the proceeds to be placed under the new option.

**General Payment Option Terms.** An option cannot be chosen after the proceeds have been paid.

If the proceeds to be placed under an option are less than $5,000, we may pay them in one sum to the payee who otherwise would receive the first payment under the option.

If any payments would be less than $50, we will change the frequency to provide payments of at least $50.

The Effective Date of any option is the date the proceeds become payable.

We may require proof to our satisfaction that any payee is alive on the date any payment is due.

If the proceeds are assigned on the Effective Date of an option, we will pay the assignee's share in one sum and place only the balance under the option. After the Effective Date neither the payments nor the remaining value may be assigned or encumbered. To the extent the law permits, they are not subject to any claims against the payee.

We may issue a document stating the terms of the option.

**Option 1 – Payments of Interest Only.** Interest at a rate of 3½% per year shall be paid either for the life of the payee or for a chosen period. We may pay more interest in any year. Upon the earlier of the death of the payee or the end of the chosen period, any remaining value will be paid. The first payment shall be made one month after the Effective Date. If the payee is not a human being, payments may not continue for more than 30 years.

**Option 2 – Payments for a Stated Time.** Equal monthly payments shall be made for a stated number of years. The first payment shall be made on the Effective Date. The amount of each monthly payment is shown in the table. The monthly payments are based on an interest rate of 3½% per year. We may pay more interest in any year.

YRT-D                                    -4-

## Option 2 Table
**Monthly Payments for Each $1,000 of Proceeds**

| Stated No. of Years | Monthly Payments |
|---|---|
| 1 | $84.65 |
| 2 | 43.05 |
| 3 | 29.19 |
| 4 | 22.27 |
| 5 | 18.12 |
| 6 | 15.35 |
| 7 | 13.38 |
| 8 | 11.90 |
| 9 | 10.75 |
| 10 | 9.83 |
| 11 | 9.09 |
| 12 | 8.46 |
| 13 | 7.94 |
| 14 | 7.49 |
| 15 | 7.10 |
| 16 | 6.76 |
| 17 | 6.47 |
| 18 | 6.20 |
| 19 | 5.97 |
| 20 | 5.75 |
| 21 | 5.56 |
| 22 | 5.39 |
| 23 | 5.24 |
| 24 | 5.09 |
| 25 | 4.96 |
| 26 | 4.84 |
| 27 | 4.73 |
| 28 | 4.63 |
| 29 | 4.53 |
| 30 | 4.45 |

**Option 3 – Payments for Life.** Equal monthly payments shall be made for any guaranteed period chosen and thereafter during the life of a chosen human being. The first payment shall be made on the Effective Date. The amount of each monthly payment depends on the age and sex of the chosen human being on the Effective Date and on any guaranteed period chosen. We may require proof to our satisfaction of such age. We may require like proof that such human being is alive on the date any payment is due. The amount of each monthly payment is shown in the table. The guaranteed period may be 10, 15 or 20 years or a Refund period. At the end of a Refund period the sum of the payments is equal to the proceeds placed under the option. The monthly payments are based on an interest rate of 3½% per year. We may pay more interest in any year during the guaranteed period.

## Option 3 Table
**Monthly Payments for Each $1,000 of Proceeds**

(Amounts shown are for the age nearest birthday on the Effective Date)

| MALE | FEMALE | Guaranteed Period | | | | |
|---|---|---|---|---|---|---|
| | | None | 10 Yrs. | 15 Yrs. | 20 Yrs. | Refund |
| 50* | 55* | $4.70 | $4.65 | $4.59 | $4.49 | $4.52 |
| 51 | 56 | 4.79 | 4.74 | 4.67 | 4.55 | 4.60 |
| 52 | 57 | 4.89 | 4.83 | 4.74 | 4.61 | 4.67 |
| 53 | 58 | 4.99 | 4.92 | 4.82 | 4.67 | 4.75 |
| 54 | 59 | 5.10 | 5.02 | 4.91 | 4.74 | 4.84 |
| 55 | 60 | 5.22 | 5.13 | 4.99 | 4.80 | 4.93 |
| 56 | 61 | 5.35 | 5.24 | 5.08 | 4.86 | 5.02 |
| 57 | 62 | 5.48 | 5.35 | 5.17 | 4.93 | 5.12 |
| 58 | 63 | 5.63 | 5.47 | 5.27 | 4.99 | 5.22 |
| 59 | 64 | 5.78 | 5.60 | 5.36 | 5.05 | 5.32 |
| 60 | 65 | 5.94 | 5.73 | 5.46 | 5.11 | 5.44 |
| 61 | 66 | 6.11 | 5.86 | 5.55 | 5.17 | 5.55 |
| 62 | 67 | 6.29 | 6.00 | 5.65 | 5.23 | 5.67 |
| 63 | 68 | 6.48 | 6.14 | 5.75 | 5.29 | 5.80 |
| 64 | 69 | 6.68 | 6.29 | 5.84 | 5.34 | 5.94 |
| 65 | 70 | 6.90 | 6.44 | 5.94 | 5.39 | 6.08 |
| 66 | 71 | 7.12 | 6.59 | 6.03 | 5.43 | 6.22 |
| 67 | 72 | 7.36 | 6.75 | 6.13 | 5.48 | 6.38 |
| 68 | 73 | 7.62 | 6.91 | 6.22 | 5.52 | 6.54 |
| 69 | 74 | 7.89 | 7.07 | 6.30 | 5.55 | 6.71 |
| 70 | 75 | 8.18 | 7.24 | 6.39 | 5.59+ | 6.89 |
| 71 | 76 | 8.49 | 7.40 | 6.47 | | 7.07 |
| 72 | 77 | 8.81 | 7.57 | 6.54 | | 7.27 |
| 73 | 78 | 9.16 | 7.74 | 6.62 | | 7.48 |
| 74 | 79 | 9.53 | 7.90 | 6.68 | | 7.69 |
| 75 | 80+ | 9.93 | 8.07 | 6.74+ | | 7.92 |
| 76 | | 10.35 | 8.23 | | | 8.16 |
| 77 | | 10.80 | 8.38 | | | 8.42 |
| 78 | | 11.29 | 8.54 | | | 8.68 |
| 79 | | 11.80 | 8.68 | | | 8.96 |
| 80+ | | 12.35+ | 8.82+ | | | 9.27+ |

+ Higher ages the same

* Amounts for lower ages quoted on request.

**Option 4 – Payments of a Stated Amount.** Equal monthly payments of a stated amount shall be made until the proceeds, with interest at 3½% per year on the unpaid balance, are used up. The first payment shall be made on the Effective Date. The amount chosen must be at least $10 per month for each $1,000 of proceeds placed under this option. We may add more interest to the unpaid balance in any year, which will extend the number of payments. The last payment will be for the balance only.

**Option 5 – Life Annuity.** Equal monthly payments shall be made in the same manner as Option 3 except:

1. the amount of each payment shall be 103½% of the monthly income provided by our Immediate Annuity rates on the Effective Date, adjusted for the first payment being made on that date; and

2. no additional interest shall be paid.

YRT-E

-5-

COPY ONLY OF INSURANCE

# INDEX

| SECTION | PAGE |
|---|---|
| ACCELERATED BENEFITS RIDER FOR IMMINENT DEATH | 1 |
| BENEFITS | |
|     Accelerated Benefits Amount | 1 |
|     Full Election | 2 |
|     Partial Election | 2 |
|     Imminent Death | 2 |
| DISPOSITION OF ADDED BENEFIT RIDERS | 3 |
| GENERAL TERMS | |
|     Election Date | 3 |
|     Election | 3 |
|     Legal Requirements | 4 |
|     Incontestability | 4 |
|     Proof of Imminent Death | 4 |
|     Termination | 4 |

COPY ONLY
NOT A CONTRACT OF INSURANCE

7490PA(0200)

Policy-000011

# ACCELERATED BENEFITS RIDER FOR IMMINENT DEATH

Accelerated Benefits are paid in lieu of future death benefits payable under the policy to which this rider is attached. If a Partial Election of Accelerated Benefits is elected, the death benefit, and the accumulated values and cash values, if any, will be reduced. Receipt of Accelerated Benefits may be a taxable event. Please consult your personal tax advisor to determine the tax status of any benefits paid under this rider.

We, National Life Insurance Company, will pay Accelerated Benefits to the Owner during the lifetime of the Insured. Such benefit will be paid:

1. upon election by the Owner; and
2. in lieu of payment of the full death benefit of the policy upon the death of the Insured; and
3. subject to the terms of this rider.

The effective date of this rider is its date of issue.

## BENEFITS

ACCELERATED
BENEFITS AMOUNT

The Accelerated Benefits Amount (called the "Amount" in this rider) will be determined when the Owner elects Accelerated Benefits. It will be determined as of the Election Date. The following factors may be used in the determination of this Amount:

1. the cash value or cash surrender value of the policy; and
2. future premiums payable under the policy; and
3. future anticipated dividends projected for the policy; and
4. any administrative fee assessed; and
5. the Accelerated Benefits Interest Rate in effect.

Any administrative fee assessed at the time of an acceleration will not exceed a maximum charge of $250, adjusted since 2000 for inflation as measured by the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the United States Department of Labor, or an appropriate successor index.

We will declare the Accelerated Benefits Interest Rate. It will not exceed the greater of:

a)   the yield on 90-day U.S. Treasury Bills on the Election Date; or
b)   the maximum adjustable policy loan interest rate allowed by law on the Election Date.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

Policy-000012

## DISPOSITION OF ADDED BENEFIT RIDERS

Upon a Full Election:

1. Any rider providing term life insurance may either be:

   a) converted or exchanged to a whole life policy subject to the terms of the term rider; or

   b) converted to a separate term policy with the same issue date, issue age, sex and issue class as the term rider.

2. Family Protection Benefit and Children Protection Benefit Riders will be treated as if the Insured died on the Election Date.

3. Riders Applying Dividends towards Paid Up Additions and One Year Term Insurance and Dividend Term Option Riders may either be converted subject to the terms of the rider or as we may otherwise agree, or these coverages may be used to increase the Amount.

4. Coverage provided by Additional Protection Benefit Riders will be used to increase the Amount.

5. All other riders will cease on the Election Date.

Upon a Partial Election, riders providing:

1. Waiver of Premium; or
2. Accidental Death Benefit; or
3. Exchange to New Insured

benefits will remain in full effect on the life insurance coverage that is continued. Other riders, including any Additional Protection Benefit Riders and Guaranteed Death Benefit Riders, may be continued at levels reduced by the percentage of death benefit accelerated.

## GENERAL TERMS

ELECTION DATE

The Election Date is the date the Application for Election of Accelerated Benefits is signed by the Owner of the policy, provided such Application is approved by us.

ELECTION

To elect Accelerated Benefits the Owner must complete an Application for Election of Accelerated Benefits. We will provide this Application at the Owner's request. The Owner must provide us with the written consent of any collateral assignee and any irrevocable beneficiaries. We may request that the contract accompany the application to our Home Office.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

Policy-000013

INDEX

| SECTION | PAGE |
|---|---|
| ACCELERATED BENEFITS RIDER FOR A COVERED CHRONIC CONDITION | 1 |
| BENEFITS | |
| Accelerated Benefits Amount | 1 |
| Full Election | 2 |
| Partial Election | 2 |
| Covered Chronic Condition | 2 |
| Limitations on Payments for a Covered Chronic Condition | 4 |
| DISPOSITION OF ADDED BENEFIT RIDERS | 4 |
| GENERAL TERMS | |
| Election Date | 5 |
| Election | 5 |
| Legal Requirements | 5 |
| Incontestability | 5 |
| Proof of a Covered Chronic Condition | 5 |
| Termination | 6 |

COPY ONLY NOT A CONTRACT OF INSURANCE

7493PA(0200)

Policy-000014

# ACCELERATED BENEFITS RIDER FOR A COVERED CHRONIC CONDITION

Accelerated Benefits are paid in lieu of future death benefits payable under the policy to which this rider is attached. If a Partial Election of Accelerated Benefits is elected, the death benefit, and the accumulated values and cash values, if any, will be reduced. Receipt of Accelerated Benefits may be a taxable event. Please consult your personal tax advisor to determine the tax status of any benefits paid under this rider.

We, National Life Insurance Company, will pay Accelerated Benefits to the Owner during the lifetime of the Insured. Such benefit will be paid:

1. upon election by the Owner; and
2. in lieu of payment of the full death benefit of the policy upon the death of the Insured; and
3. subject to the terms of this rider.

The effective date of this rider is its date of issue.

# BENEFITS

**ACCELERATED BENEFITS AMOUNT**

The Accelerated Benefits Amount (called the "Amount" in this rider) will be determined when the Owner elects Accelerated Benefits. It will be determined as of the Election Date. The following factors may be used in the determination of this Amount:

1. the cash value or cash surrender value of the policy; and
2. future premiums payable under the policy; and
3. future anticipated dividends projected for the policy; and
4. any administrative fee assessed; and
5. the Accelerated Benefits Interest Rate in effect.

Any administrative fee assessed at the time of an acceleration will not exceed a maximum charge of $250, adjusted since 2000 for inflation as measured by the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the United States Department of Labor, or an appropriate successor index.

We will declare the Accelerated Benefits Interest Rate. It will not exceed the greater of:

a) the yield on 90-day U.S. Treasury Bills on the Election Date; or
b) the maximum adjustable policy loan interest rate allowed by law on the Election Date.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

COPY ONLY NOT A CONTRACT OF INSURANCE

Substantial Assistance means Hands-on Assistance or Standby Assistance. Hands-on Assistance means the physical assistance of another person without which the individual would be unable to perform the Activity of Daily Living. Standby Assistance means the presence of another person within arm's reach of the individual that is necessary to prevent, by physical intervention, injury to the individual while he or she is performing an Activity of Daily Living (such as being ready to catch the individual if he or she falls while getting into or out of a bathtub or shower while bathing, or being prepared to remove food from the individual's throat if he or she chokes while eating).

The Activities of Daily Living are bathing, continence, dressing, eating, toileting, and transferring.

- Bathing means washing oneself by sponge bath, or in a tub or shower, including the task of getting into and out of the tub or shower.
- Continence means the ability to maintain control of bowel and bladder function, or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).
- Dressing means putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.
- Eating means feeding oneself by getting food into the body from a receptacle (such as a plate, cup, or table) or by a feeding tube or intravenously.
- Toileting means getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
- Transferring means moving into or out of a bed, chair, or wheelchair.

Severe Cognitive Impairment means the deterioration or loss of intellectual capacity that is:

1. comparable to (and includes) Alzheimer's Disease and similar forms of irreversible dementia; and
2. measured by clinical evidence and standardized tests which reliably measure impairment in:

   a) short-term or long-term memory; or
   b) orientation to people, places, or time; or
   c) deductive or abstract reasoning; or
   d) judgment as it relates to safety awareness.

A Licensed Health Care Practitioner must certify to the 90-day loss of functional capacity within the 12 months immediately preceding the Election Date.

A Licensed Health Care Practitioner is a Physician, a registered professional nurse, or a licensed social worker.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

benefits will remain in full effect on the life insurance coverage that is continued. Other riders, including any Additional Protection Benefit Riders and Guaranteed Death Benefit Riders, may be continued at levels reduced by the percentage of death benefit accelerated.

# GENERAL TERMS

**ELECTION DATE**

The Election Date is the date the Application for Election of Accelerated Benefits is signed by the Owner of the policy, provided such Application is approved by us.

**ELECTION**

To elect Accelerated Benefits the Owner must complete an Application for Election of Accelerated Benefits. We will provide this Application at the Owner's request. The Owner must provide us with the written consent of any collateral assignee and any irrevocable beneficiaries. We may request that the contract accompany the application to our Home Office.

**LEGAL REQUIREMENTS**



If the Owner is required by law to elect Accelerated Benefits to meet the claims of creditors, whether in bankruptcy or otherwise, Accelerated Benefits will not be available.

If the Owner is required by a government agency to elect Accelerated Benefits to apply for, obtain, or keep a government benefit or entitlement, Accelerated Benefits will not be available.

**INCONTESTABILITY**

This rider is contestable on the same basis as the policy to which it is attached.

**PROOF OF A COVERED CHRONIC CONDITION**

We must receive written proof satisfactory to us that the Insured has a Covered Chronic Condition. Such written proof must include a statement from a Physician or Licensed Health Care Practitioner, other than the Insured or a member of the Insured's immediate family, affirming the Covered Chronic Condition.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

Policy-000017

**Life Insurance Application**

Site Location and No.: Mid Atlantic 119    Qualified Retirement Plan/Code No.: _____

Check one: ☒ Single Life  ☐ Joint Life  ☐ Variable Universal Life  ☐ Joint & Variable Universal Life
☐ Exercising Additional Insurance Option From Base Policy No.: _____   Policy No.: 3 9 8 2 1 5 - -

**Part A - First Proposed Insured Information**

1. Name (print first, middle, last)   Eric Drake
2. Home Address (street, city, state and zip)   1211 George Rd  Meadowbrook PA 19046
3. Place of Birth   England   4. D.O.B. Redacted   5. Issue at Age 53   6. Sex ☒ M ☐ F   7. Soc. Sec. # Redacted
8. Telephone #'s and best time to call
Home (215) 947-72?? Work ( )
Best time to call:    Best time to call:
9a. Occupation (w/specific duties)   Sales
9b. Are you actively at work at the customary workplace, doing the usual duties and functions required by the position during the normal work hours and weekly period? ☒ Yes ☐ No*  *Reason: _____
10. Employer Name & Address: (street city, state and zip)   Self
11. Driver's License # and state:   No.: 2041425   State: PA

**Part B - Policy Information**

1. Base Plan   NLGL10   2. Amount $ 500,000
3. Term Rider Plan   4. Amount $ _____
5. Additional Benefits and Amounts:
   a. Traditional
      ☒ Accelerated Benefits (ABR)
      ☐ Accidental Death Benefit (ADB)   $_____
      ☐ Additional Insurance Option (AIO) $_____
      ☐ Additional Paid-Up Life
         Annual Premium (APAR)   $_____
         ☐ Payable on a Modal Basis
      Single Premium (SPAR)   $_____
      ☐ Beneficiary Insurance Option (BIO)
      ☐ Waiver of Premiums (WP)
         (N/A on Second to Die & Cornerstone Series)
      ☐ Waiver of Premiums (WP)   $_____
         (Cornerstone Series only)      (Annual Premium Waived)
      ☐ Policy Continuation Rider (PCR) (First to Die only)
      ☐ Policy Split Option (PSO) (Second to Die only)
      ☐ Other: _____
   b. Universal Life
      ☐ Accelerated Benefits (ABR)
      ☐ Additional Protection (APB) (N/A for NLG120) $_____
      ☐ Automatic Increase (AIR) (N/A for NLG120)
         ☐ 2%  ☐ 4%  ☐ 6% (N/A for Survivorship)
         ☐ 5%  ☐ 10% ☐ Stipulated (Survivorship only)
      ☐ Continuing Coverage Rider (CCR) (Survivorship only)
      ☐ Enhanced Death Benefit (EDBR) (Survivorship only)
         Target Age _____
      ☐ Estate Preservation Rider (EPR) (Survivorship only) $_____
      ☐ Guaranteed Insurance Option (GIO) (N/A for Surv.) $_____
      ☐ Guaranteed Death Benefit (GDB) (Variable Single Life only)
      ☐ Guaranteed Death Benefit (GDB) (Variable Survivorship only)
         ☐ 80 Years  ☐ Lifetime
      ☐ Policy Split Option (PSO) (Survivorship only)
      ☐ Term Rider on First Proposed Insured: (Survivorship only)
         Level Amount _____
         ☐ Increasing ☐ Decreasing   Dur Yrs _____
      ☐ Term Rider on Second Proposed Insured: (Survivorship only)
         Level Amount _____
         ☐ Increasing ☐ Decreasing   Dur Yrs _____
      ☐ Waiver of Monthly Deductions (WMD) (N/A for Survivorship)
      ☐ Other: _____

6.  a. Universal Life Death Benefit Option (N/A for NLG120)
       ☐ A - Level   ☐ B - Increasing
    b. Definition of Life Insurance Test: (Applies to EIUL only. GPT must be selected if policy is not a MEC.)
       ☐ Guideline Premium Test (GPT)
       ☐ Cash Value Accumulation Test (CVAT)
7.  Premium Information
    a. Cash with Application $ 1,500 —
    b. Planned Periodic Premium $_____ (UL & Cornerstone Series)
    c. Frequency
       ☐ Annual       ☒ Semi-Annual ☐ Quarterly
       ☐ Monthly (Group or Pension only; if Variable)
       ☐ Single Premium  ☐ COM (Complete #11)
8.  Special Billing Type: (N/A for Qualified Pension Business)
    ☐ Government Allotment _____ Group No.: _____
    ☐ Payroll Deduction No.: _____
9.  Use of Dividends: (N/A for EIUL) (Choose only one.)
    ☒ Cash (All Products)
    ☐ Additions (Whole Life & UL, N/A for NLG120)
    ☐ Applied (Whole Life & Term only, N/A with CCM)
    ☐ Deposits (Whole Life & Term only)
    ☐ DTO Balance to: _____ (Whole Life only, except Cornerstone Series)
    ☐ Flex Term Rider I - B Decreasing (Whole Life only)
       One Yr. Term + Adds = $_____
       A premium will be charged for this rider.
    ☐ Flex Term Rider II - A Level (Whole Life only)
       One Yr. Term = $_____ , + Adds
       A premium will be charged for this rider.
    ☐ Internal Paid-Up Insurance (Cornerstone Series Only)
10. Automatic Payment of Premium
    ☐ Requested   ☐ Not Requested
11. ☐ I authorize the Company to draft monthly payments from my account. (Attach a void check/deposit slip)
    ☐ Checking      Draft on the:
    ☐ Savings         ☐ 1st  ☐ 15th
    ☐ Money Market  ☐ 8th  ☐ 22nd
12. Send premium notices to: ☒ Owner
    ☐ First Proposed Insured ☐ Other: (street, city, state & zip)

9212PA(0306)
Cat. No. 47379

National Life Insurance Company
One National Life Drive Montpelier, VT 05604 • Tel: 802 229-3333

Page 1

**2398215**

**Part C - Owner Information**

1. *(Check one if other than First Proposed Insured)*

☐ **Individual**

*Provide additional information below:*

Name: _____ Relationship _____ Date of Birth _____, while living thereafter

Name: _____ Relationship _____ Date of Birth _____, while living, thereafter the estate of the last survivor of the named owner(s).

☐ **Corporation, Limited Partnership, or Limited Liability Company**

Full Legal Name: _____, a *(State)* _____

☐ Corporation  ☐ Limited Partnership  ☐ Limited Liability Company, its successors or assigns.

☐ **Partnership:** _____, a partnership of *(City and State)* _____ or any successor partnership doing business in said city under said name.

☐ **Trust:** *(Name of Trustee(s))* _____, trustee(s) under an

instrument of trust between *(Name of Trustor)* _____ and said

trustee(s) named *(Name of Trust)* _____ and dated _____, as heretofore or hereafter amended if trust is amendable, or the successors in said trust or assigns.

☐ **Qualified Pension or Profit Sharing Trust** *(Name of Trust Agreement)* _____

☐ **As per Supplemental Request**

Please provide the following information for the Owner:

2. Social Security Number or Tax Identification Number: _____

3. Address: *(Street, City State, Zip)* _____

4. Telephone Number: ( ) _____

**Part D - Beneficiary Information**

1. *(Check one or fill in the First and Second Beneficiary)*

Note: If the policy is owned by a qualified pension or profit sharing plan, all payments are protected by the Spendthrift Provision. The right to change the beneficiary is reserved.

☐ Owner
☐ As per Supplemental Request
☐ Other: *(Give full names, addresses, dates of birth and relationships to Proposed Insured.)*

First    Judith A. Drake 100% wife    Redacted dob

Second    Redacted 100% daughter    Redacted dob

**Single Life**
Payment will be shared equally by all *first* beneficiaries who survive the Insured; if none, by all *second* beneficiaries who so survive; if none, payment will be made to the Owner or the Owner's estate.

**First to Die**
When death benefit is payable at the demise of the first Insured to die, payment will be shared equally by all *first* beneficiaries who survive the first to die of the Insureds; if none, by all *second* beneficiaries who so survive; if none, payment will be made to the Owner or the Owner's estate.

**Last to Die**
When death benefit is payable at the demise of the last Insured to die, payment will be shared equally by all *first* beneficiaries who survive the last to die of the Insureds; if none, by all *second* beneficiaries who so survive; if none, payment will be made to the Owner or the Owner's estate.

9212PA(0306)    Page 2

**2398215 - -**

**Part E - Qualified Retirement Business ONLY**

1. Issue Date: _____     2. (Check one.)  ☐ Sex Neutral   ☐ Sex Distinct

*(Answer a & b only for Simplified Underwriting)*

3. ☐ Full Underwriting     ☐ Guaranteed Issue     ☐ Automatic Issue

☐ Simplified Underwriting *(If either questions a or b are answered Yes, give the following details in the space provided. Nature of ailment, date, duration and names and addresses of attending physicians.)*

   a.  Have you been admitted to, or been advised to be admitted to a hospital or medical facility in the past 90 days by a member of the medical profession? *(If 'Yes', provide details.)* ☐ Yes ☐ No

   b.  In the past two years have you been treated for or advised by a member of the medical profession to seek treatment for heart problems (including angina), stroke, or cancer, or been treated for or diagnosed as having AIDS or AIDS Related Complex (ARC)? ☐ Yes ☐ No

**Part F - General Information about the First Proposed Insured** *(If 'Yes', provide details in Remarks on page 8)*

1. Have you used any type of product containing nicotine within the last 24 months? ☒ Yes ☐ No
   Product Type: ~~Cigarettes~~   Frequency: 1 pk daily  Date Last Used: _____
2. Have you ever applied for life, health, or disability insurance or reinstatement of same, which was declined, postponed, rated or modified in any way? ~~Phoenix Table 2~~ ☒ Yes ☒ No
3. Are you or do you have any intention of becoming a member of a military organization? ☐ Yes ☒ No
4. Have you had any moving vehicle violations in the last 3 years, or a suspended license or a DUI conviction in the last 5 years? ☐ Yes ☒ No
5. Have there been any bankruptcy proceedings against you within the last 7 years? ☐ Yes ☒ No
6. Within the past 6 months have you applied for or do you currently have any applications pending for life or disability Insurance? ~~Phoenix UK 2000 — will be NOT TAKEN~~ ☒ Yes ☐ No
   *(If 'Yes', to questions 7-9 complete form 1480, Avocation, Aviation & Foreign Travel Supplemental Application)*
7. Within the last 3 years, have you participated in or do you intend to participate in any motor powered racing, scuba, skin or sky diving, rodeos, hang gliding or any other avocation generally considered hazardous? ☐ Yes ☒ No
8. Do you participate in any aviation activity other than as a fare paying passenger? ☐ Yes ☒ No
9. Do you intend to travel or reside outside of the USA for more than 2 weeks in a year? ☐ Yes ☒ No

**Part G - Replacement Information** *(If 'Yes', Replacement forms must be provided; list company name and policy numbers)*

1. Has there been or will there be a lapse, surrender, replacement, reissue, conversion, or change to reduce amount, premium, or period of coverage of any existing life, disability or annuity contract if the applied for policy or rider is issued? ☒ Yes ☐ No

   N250,000 Term  Ins. w/ NLV  to be terminated

2. Will there be borrowing in excess of 25% of the loan value on any life insurance policy if the applied for policy or rider is issued? ☐ Yes ☒ No
   Company Name(s) and Policy Number(s)

**Part H - Current Policy Information about the First Proposed Insured**

☐ None in force     Type: B=Business     G=Group     P=Personal

| Company Name | Type | Total in Force $ | Total with WP $ | Total ADB $ | Date of Issue | Paid to Date |
|---|---|---|---|---|---|---|
| NLV | P | 350,000 | — | — | 1991 | current |

9212PA(0306)

Policy-000020

**2398215 --**

**Part I - Health History of the First Proposed Insured** *(Complete Part I unless (a) money does not accompany this application and (b) a further medical examination will be undertaken.  Do not complete Part I if this application is being submitted for the Pension underwriting classes of Guaranteed Issue, Simplified Underwriting, or Automatic Issue.)*
*Provide details, dates, and results for any 'Yes' answer to questions 1-10 in Remarks on page 8.*

1. Height 5'8"  Weight 165 lbs.   Change in last year 0 lbs.   Reason?

| | | Yes | No |
|---|---|---|---|
| 2. | Are you taking any medication? | ☑Yes | ☐No |
| 3. | Is your health impaired in any way? | ☐Yes | ☑No |
| 4. | Have you ever applied for or received disability or worker's compensation from any source? | ☐Yes | ☑No |
| 5. | At any time during the last 10 years have you: | | |
| | a. been advised to reduce alcohol or drug intake, or used drugs not prescribed by a physician? | ☐Yes | ☑No |
| | b. have you attended meetings of Alcohol Anonymous or Narcotics Anonymous or another commonly recognized treatment group or organization? | ☐Yes | ☑No |
| 6. | At any time during the last 10 years have you been diagnosed, treated, or taken medication for: | | |
| | a. Chest Pain, Heart Murmur, Rheumatic Fever or Anemia | ☐Yes | ☑No |
| | b. Habitual Cough, Asthma, Emphysema or Pleurisy | ☐Yes | ☑No |
| | c. Ulcer, Jaundice or Chronic Indigestion | ☐Yes | ☑No |
| | d. Stroke, Dizzy Spells, Epilepsy, Convulsions, Paralysis or Unconsciousness | ☐Yes | ☑No |
| | e. Heart, Veins, Arteries, Blood or Blood Pressure Disorder | ☐Yes | ☑No |
| | f. Lung or Respiratory Tract Disorder | ☐Yes | ☑No |
| | g. Esophagus, Stomach, Intestinal, Rectum, Liver or Gall Bladder Disorder | ☐Yes | ☑No |
| | h. Kidney, Bladder, Prostate, Genito-Urinary Organs, Pelvic Organs, or Breast Disease | ☐Yes | ☑No |
| | i. Eyes, Ears, Nose, or Throat Disorder | ☐Yes | ☑No |
| | j. Brain, Nervous System Disorder or Headaches | ☐Yes | ☑No |
| | k. Spine, Bones, Muscles, Joints, Skin or Gland Disorder | ☐Yes | ☑No |
| | l. Cancer, Polyp, or Other Tumor | ☐Yes | ☑No |
| | m. Gout, Arthritis, Rheumatism or Back Pain | ☐Yes | ☑No |
| | n. High Blood Sugar or Diabetes | ☐Yes | ☑No |
| | o. Albumin, Sugar, Casts, Pus or Blood in the Urine | ☐Yes | ☑No |
| | p. Renal Colic or Kidney Stone | ☐Yes | ☑No |
| | q. Depression, Anxiety, or any other Psychological Condition | ☑Yes | ☐No |
| 7. | Within the past 10 years have you tested positive for exposure to the Human Immunodeficiency Virus (HIV), or has a physician or other medical professional diagnosed you as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐Yes | ☑No |
| 8. | Within the past 5 years have you: | | |
| | a. had x-rays, electrocardiograms or other diagnostic tests? | ☑Yes | ☐No |
| | b. been admitted to a hospital, or have you planned or been advised to enter a hospital for observation, operation or treatment of any kind? | ☐Yes | ☑No |
| | c. consulted any medical professional other than your personal physician? | ☐Yes | ☑No |
| 9. | Do you have any pending appointments with any medical professional within the next 30 days? | ☐Yes | ☑No |
| 10. | To the best of your knowledge, has any member of your family had diabetes, cancer, heart disease, Huntington's Disease or polycystic kidney disease? | ☐Yes | ☑No |

*(watermark: COPY ONLY OF INSURANCE)*

| 11. Name and Address of Personal Physician *(if none, so state)* | Date last seen | Reason consulted & outcome |
|---|---|---|
| Dr. Cooper<br>1927 Nicholas Ave<br>Huntingdon Valley PA 19006 | @ 1 yr ago | Synthroid medication |

| 12. Family History | Age if alive | State of Health | Age at death | Cause of death |
|---|---|---|---|---|
| Father | unknown | | | |
| Mother | 77 | Fair | | |
| Siblings | 55 | Good | | |
| Siblings | | | | |

9212PA(0306)

Page 4

2398215

**Part R - Remarks** (Provide the details to any questions so requested. Attach additional pages if necessary)

| Section & Number: | Additional Information: |
|---|---|
| 2, b9 | Cerago / Synthroid |
| | Dr. Cooper    Nicholas Ave |
| | Huntington Valley   PA |
| 9a | Dr. Martin Cooper.  last seen @ 1 yr ago. |
| | Normal result |

COPY ONLY
NOT A CONTRACT OF INSURANCE

**Part S - Agreement & Authorization**

To the best of my (our) knowledge and belief, the statements and answers given on this application are complete and true.  They shall be a part of the contract of insurance if one is issued.  The Applicant acknowledges his or her reliance on all statements and answers attested to in this Application.

National Life Insurance Company (the Company) may make administrative corrections and changes to this application.  These, if any, are noted on the "Application Amendment" page which is attached to the policy at issue.  Acceptance of any policy issued on this application will ratify and will be notice of any such change made.  If the laws where the application is made so require, any change of amount, age at issue, class of risk, plan of insurance or benefits must be ratified in writing.

The Agent taking this application has no authority to make, change or discharge any contract hereby applied for.  The Agent may not extend credit on behalf of the Company.  No statement made to or information acquired by any representative of the Company shall bind the Company unless set out in writing in this application.

**The Company shall incur no liability under any policy issued on this application unless and until:**
  a.  such policy is delivered to the Owner, and
  b.  the first premium is paid prior to any change in the Proposed Insured(s) good health and insurability.

**NOTICE:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

If I (we) have purchased variable insurance coverage, I (we) have received and understand a current prospectus for the contract and its underlying accounts.  This prospectus describes the variable nature of this product and the utilization of a Separate Account or Variable Account.

**The Applicant has received an illustration of the policy applied for, signed and returned the illustration with this application.  The Soliciting Agent has presented the illustration and explained any non-guaranteed elements of the policy to the Applicant.** ☒ Yes ☐ No

**2398215 - -**

## Part S - Agreement & Authorization (Continued)

I (we), the Proposed Insured(s), authorize any physician, medical practitioner, hospital, clinic, or other medically related facility, insurer or reinsurer, the Medical Information Bureau, Inc. (MIB), consumer reporting agency, or employer having information as to:

- diagnosis, treatment and prognosis of any physical or mental condition of me (us) or any of my (our) minor children on whose life I (we) have applied for insurance;
- any non-medical information of me (us) or such minor children;

to give National Life Insurance Company, herein called National Life, or its authorized representative, any and all such information.

I (we) authorize National Life to request a copy of my (our) driving record(s) from the state motor vehicle department.

I (we) authorize National Life Insurance Company to obtain an investigative consumer report. I (we) understand that I am (we are) entitled to be interviewed by the consumer reporting agency that prepares any such report, as long as I (we) can reasonably be contacted during normal business hours.

☐ I (we) wish to be interviewed if an investigative consumer report is prepared.

This information may be used to determine eligibility for life or health insurance or claims for benefits, and I (we) authorize National Life to release any of this information to the MIB and/or Reinsurers and other life insurance companies in which I (we) have insurance or from which I (we) seek insurance or benefits.

I (we) authorize National Life to redisclose the information to:

- Any person performing a business or legal function for its benefit;
- An attending physician for diagnostic or treatment purposes;
- Government authorities to prevent insurance related illegal activities;
- Persons conducting medical or statistical studies for National Life;
- Persons having an authorization specifically permitting the redisclosure;

and when required by law. In making this authorization, I (we) waive my right to prohibit redisclosure to an affiliate of National Life where the redisclosure is related to the servicing of my (our) policy.

This authorization shall remain valid for 30 months from the date shown below.

I (we) understand I (we) have a right to receive a copy of this authorization. A copy of this authorization shall be as valid as the original. I (we) acknowledge receipt of copies of the prenotifications relating to investigative consumer reports and the MIB.

## Part T - Owner's Taxpayer ID Number Certification

Under penalties of perjury, I certify that (1) the number shown on this application is my correct taxpayer identification number, (2) the IRS has never notified me that I am subject to backup withholding, or has notified me that I am no longer subject to such withholding or I am exempt from such withholding; and (3) I am a U.S. person (including a U.S. resident alien). You must cross out item 2 if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return.

## Part U - Signatures

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Signed at (City & State) _Meadowbrook    PA_        Date (mm/dd/yyyy) _10-7-06_

First Proposed Insured (Sign name in full)                    Applicant (Sign name in full if other than Proposed Insured)

_____                                      _____

Second Proposed Insured (Sign name in full)

_____

Soliciting Agent/Representative (Sign name in full)

_____

For Check-O-Matic Only (If Depositor other than Applicant/Owner)        Owner (If other than Applicant or Proposed Insured)
Depositor (Exactly as it appears on bank records)

_____                                      _____

                                                               (Exercise of AIO Only)
                                                               Owner of Base Policy

_____

9212PA(0306)                                                                          Page 6

**NATIONAL LIFE**

**Medical Questionnaire**

**Instructions:**
- Be sure to use the current and correct state specific National Life form.
- **Fees for Incomplete Exams will be charged back.**
- Pose each question exactly as printed.
- Check each 'YES' / 'NO' box – All questions must be answered.
- **Client must be weighed on a scale and measured.**

- Be sure to sign and date the form.
- Include the Agency name and number on all Lab ID slips.
- Paramedicals complete Pgs 1 & 2 and Pg 3 questions 18-27.
- Physicians complete the form in full.
- Non-Med Requirement: Pgs 1 & 2 completed by Agent.
- Deliver or mail the completed form.

1. Full Name of Proposed Insured   ERIC DRAKE

2a. Date of birth: *Redacted*    2b. Place of birth:   ENGLAND

3. Height  5'8"  Weight  165  lbs.   Change in last year ____ lbs.   Reason? _none_

If any question is answered 'Yes', give dates, details, results & include physician's name, address and phone number in Remarks on page 2.

| | | Yes | No |
|---|---|---|---|
| 4. | a. To the best of your knowledge, is your health impaired in any way? | ☐ Yes | ☑ No |
| | b. Are you taking any medications currently? If so, what and why? | ☐ Yes | ☑ No |
| | c. Have you ever applied for or received disability compensation from any source? | ☐ Yes | ☑ No |
| 5. | a. Within the past 10 years have you been advised by a physician or other medical professional, to reduce alcohol intake or have you attended meetings of Alcoholics Anonymous or another commonly recognized treatment group or organization? | ☐ Yes | ☑ No |
| | b. Except as prescribed by a physician, have you ever used narcotic drugs, amphetamines, cocaine, barbiturates, tranquilizers, hallucinogens or marijuana? | ☐ Yes | ☑ No |
| | c. Do you now use nicotine products in any form (including cigarettes, cigars, chewing tobacco, smokeless tobacco, pipe, "the patch", snuff or nicotine gum) or have you used nicotine products in any form within the last 24 months? | ☑ Yes | ☐ No |
| 6. | To the best of your knowledge, within the past 10 years, have you had: | | |
| | a. Chest pain, heart murmur, rheumatic fever or anemia? | ☐ Yes | ☑ No |
| | b. Habitual cough, asthma, emphysema or pleurisy? | ☐ Yes | ☑ No |
| | c. Ulcer, jaundice or chronic indigestion? | ☐ Yes | ☑ No |
| | d. Stroke, dizzy spells, epilepsy, convulsions, paralysis or unconsciousness? | ☐ Yes | ☑ No |
| 7. | To the best of your knowledge, within the past 10 years, have you received professional treatment or advice for disease or disorder of: | | |
| | a. Heart, veins, arteries, blood or blood pressure? | ☐ Yes | ☑ No |
| | b. Lungs or respiratory tract? | ☐ Yes | ☑ No |
| | c. Esophagus, stomach, intestines, rectum, liver or gall bladder? | ☐ Yes | ☑ No |
| | d. Kidney, bladder, prostate, genito-urinary organs, pelvic organs or breast? | ☐ Yes | ☑ No |
| | e. Eyes, ears, nose or throat? | ☐ Yes | ☑ No |
| | f. Brain, nervous system or headaches? | ☐ Yes | ☑ No |
| | g. Spine, bones, muscles, joints, skin or glands? | ☐ Yes | ☑ No |
| 8. | To the best of your knowledge, within the past 10 years, have you been advised by a physician or other medical professional that you had: | | |
| | a. Cancer, polyp or other tumor? | ☐ Yes | ☑ No |
| | b. Gout, arthritis, rheumatism or back disorder? | ☐ Yes | ☑ No |
| | c. High blood sugar or diabetes? | ☐ Yes | ☑ No |
| | d. Albumin, sugar, protein or blood in the urine? | ☐ Yes | ☑ No |
| | e. Renal colic or kidney stone? | ☐ Yes | ☑ No |
| | f. Anxiety, depression, neurosis, psychosis, psychological problem or condition? | ☑ Yes | ☐ No |
| 9. | Within the past 10 years have you tested positive for exposure to the Human Immunodeficiency Virus (HIV), or has a physician or other medical professional diagnosed you as having or treated you for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ Yes | ☑ No |
| 10. | Have you had x-rays, electrocardiograms or other diagnostic tests within the past 5 years?  If so, where? | ☐ Yes | ☑ No |
| 11. | Have you within the past 5 years been in or do you plan to enter or have you been advised by a person licensed in a medical profession, practicing within the scope of his or her license, to enter a hospital for observation, operation or treatment? | ☐ Yes | ☑ No |
| 12. | Do you have pending, or do you intend to make within the next 30 days, an appointment with any physician or other medical professional? Why? | ☐ Yes | ☑ No |
| 13. | Have you consulted any physicians or other medical professionals other than your personal physician within the past 5 years? | ☐ Yes | ☑ No |
| 14. | To the best of your knowledge, has any member of your family had diabetes, heart disease, cancer, Huntington's Disease or polycystic kidney disease? | ☐ Yes | ☑ No |

COPY ONLY NOT IN LIEU OF INSURANCE

NATIONAL LIFE VARIABLE CONTRACTS DISTRIBUTED BY EQUITY SERVICES, INC. • BROKER-DEALER SUBSIDIARY OF NATIONAL LIFE INSURANCE COMPANY
ONE NATIONAL LIFE DRIVE • MONTPELIER, VERMONT 05604 • TEL: (802) 229-3900
1443PA(1103)
Cat. No. 40241

Page 1 of 3

**Medical Questionnaire** *(Continued)*

15. Name and Address of Personal Physician *(if none, so state)*   Date last seen   Reason consulted & outcome

Dr. Cooper
1927 Nicholas Dr.   9mos.   Synthroid medication
Huntingdon Valley, PA 19006

16. Family History

| | Age if alive | State of Health | Age at death | Cause of death |
|---|---|---|---|---|
| Father | | Doesn't know | | |
| Mother | 77 | Fair; congenital heart defect; pacemaker | | |
| Siblings | 18 55 | Good Health | | |
| Siblings | | | | |

17. Remarks *(Provide dates, details, results & include physician's name, address and phone number to any questions so requested.)*

| Question Number | Additional Information |
|---|---|
| 9b | Lexapro, Synthroid – |
| | Lexapro – onset: 5ys dx: depression |
| | Dr. Cooper 1927 Nicholas Dr. Huntingdon Valley 19006 |
| | Synthroid: dx: thyroid disease |
| | onset: 1yr |
| | Dr. Cooper – see above for address |
| 9c | Cigarettes – 1pk / day |
| 9f | See 9b |

COPY ONLY
NOT A CONTRACT OF INSURANCE

NOTICE: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

I have read the answers to the foregoing questions. They are correctly recorded and they are complete and true to the best of my knowledge and belief. They shall be used by the Company in any action it takes.

*(Please sign name in full)*
Signature of Witness _Claire Kessler_   Date _7/28/06_

Signature of Proposed Insured _Eric Drake_   Date _7/28/06_
Proposed Insured *(Print)* _ERIC DRAKE_

1443PA(1103)   Page 2 of 3

# INDEX

| SECTION | PAGE |
|---|---|
| ENDORSEMENT TO THE PAYMENT OPTIONS | |
| Values | 1 |
| PAYMENT OPTIONS | |
| Option Effective Date | 1 |
| General Payment Option Terms | 1 |
| Choice of Option | 2 |
| Change of Payment Option | 2 |
| Lump Sum Removal of Proceeds Applied under a Payment Option | 2 |
| Option 1 -Payment of Interest Only | 3 |
| Option 2 -Payments for a Stated Time | 3 |
| Option 3 -Payments for Life | 4 |
| Option 4 -Payments of a Stated Amount | 6 |
| Option 5 - Life Annuity | 6 |
| Option 6 - Joint and Two-Thirds Annuity | 6 |
| Option 7 - 50% Survivor Annuity | 7 |

COPY ONLY
NOT A CONTRACT OF INSURANCE

9631PA(0803)

Policy-000026

# ENDORSEMENT TO THE PAYMENT OPTIONS

Effective as of the policy Date of Issue, the policy is amended and modified as set forth below.

## VALUES

Notwithstanding any declaration to the contrary within the policy, the tabled values in Payment Options are based on the 2000 Table for Individual Annuitant Mortality (IAM) and compound interest at a rate of 1.50% per year.

The following Payment Options section replaces the entire Payment Options section within the policy to which this Endorsement is attached.

# PAYMENT OPTIONS

In lieu of a lump sum settlement, all or part of the proceeds of this policy may be applied under a Payment Option. When proceeds are applied under a Payment Option, all other rights and benefits under this policy shall cease.

In addition to the following options, other payment options may be available.

**OPTION EFFECTIVE DATE**

The Option Effective Date is the date the proceeds become payable.

**GENERAL PAYMENT OPTION TERMS**

If the proceeds to be placed under a Payment Option are less than $5,000, we may pay them in one sum to the payee who otherwise would receive the first payment under the option. If any payments would be less than $100, we will change the frequency to provide payments of at least $100.

If the proceeds are assigned on the Option Effective Date, we will pay the assignee's share in one sum and place only the balance under the option. After the Option Effective Date neither the payments nor the remaining value may be assigned or encumbered. To the extent the law permits, they are not subject to any claims against the payee.

We may require proof to our satisfaction that any payee is alive on the date any payment is due.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

COPY ONLY NOT A CONTRACT OF INSURANCE

**OPTION 1
-PAYMENT OF
INTEREST ONLY**

Interest at a rate of 1.50% per year shall be paid either for:

1. the life of a chosen human being; or
2. a chosen period.

We may pay more interest in any given year. Upon the earlier of the death of the chosen human being or the end of the chosen period, any remaining value will be paid. The first payment shall be made one month after the Option Effective Date. If the payee is not a human being, payments may not continue for more than 30 years.

**OPTION 2
-PAYMENTS FOR A
STATED TIME**

Equal monthly payments shall be made for a stated number of years. The first payment shall be made on the Option Effective Date. The amount of each monthly payment is shown in the table. The monthly payments are based on an interest rate of 1.50% per year. We may pay more interest in any year.

COPY ONLY
NOT A CONTRACT OF INSURANCE

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

9631PA(0803)                                                        *Page 3*

Policy-000028

Option 3 Table
Monthly Payments for Each $1,000 of Proceeds

(Amounts shown are for the age nearest birthday on the Option Effective Date)

Guaranteed Period

| | Male | | | Female | | |
|---|---|---|---|---|---|---|
| Age | None | 10 Years | Refund | None | 10 Years | Refund |
| 50 | $3.24 | $3.22 | $3.02 | $3.00 | $2.99 | $2.86 |
| 51 | 3.31 | 3.29 | 3.08 | 3.06 | 3.05 | 2.91 |
| 52 | 3.39 | 3.36 | 3.13 | 3.13 | 3.11 | 2.96 |
| 53 | 3.47 | 3.44 | 3.19 | 3.19 | 3.18 | 3.02 |
| 54 | 3.55 | 3.51 | 3.25 | 3.26 | 3.25 | 3.07 |
| 55 | 3.63 | 3.60 | 3.31 | 3.34 | 3.32 | 3.13 |
| 56 | 3.73 | 3.68 | 3.38 | 3.41 | 3.39 | 3.19 |
| 57 | 3.82 | 3.77 | 3.45 | 3.50 | 3.47 | 3.26 |
| 58 | 3.92 | 3.87 | 3.52 | 3.58 | 3.56 | 3.32 |
| 59 | 4.03 | 3.97 | 3.60 | 3.68 | 3.64 | 3.39 |
| 60 | 4.15 | 4.07 | 3.67 | 3.78 | 3.74 | 3.46 |
| 61 | 4.27 | 4.19 | 3.76 | 3.88 | 3.83 | 3.54 |
| 62 | 4.40 | 4.30 | 3.84 | 3.99 | 3.94 | 3.62 |
| 63 | 4.54 | 4.42 | 3.93 | 4.11 | 4.05 | 3.70 |
| 64 | 4.69 | 4.55 | 4.02 | 4.23 | 4.16 | 3.79 |
| 65 | 4.85 | 4.69 | 4.12 | 4.37 | 4.28 | 3.88 |
| 66 | 5.02 | 4.83 | 4.23 | 4.51 | 4.41 | 3.98 |
| 67 | 5.20 | 4.98 | 4.33 | 4.66 | 4.55 | 4.08 |
| 68 | 5.39 | 5.13 | 4.45 | 4.83 | 4.69 | 4.19 |
| 69 | 5.60 | 5.29 | 4.57 | 5.00 | 4.84 | 4.30 |
| 70 | 5.82 | 5.45 | 4.70 | 5.19 | 5.00 | 4.43 |
| 71 | 6.05 | 5.62 | 4.82 | 5.39 | 5.17 | 4.55 |
| 72 | 6.30 | 5.79 | 4.96 | 5.61 | 5.34 | 4.68 |
| 73 | 6.57 | 5.96 | 5.11 | 5.85 | 5.52 | 4.82 |
| 74 | 6.85 | 6.14 | 5.25 | 6.11 | 5.71 | 4.98 |
| 75 | 7.15 | 6.32 | 5.41 | 6.39 | 5.91 | 5.13 |
| 76 | 7.47 | 6.51 | 5.59 | 6.69 | 6.11 | 5.30 |
| 77 | 7.82 | 6.69 | 5.75 | 7.01 | 6.31 | 5.47 |
| 78 | 8.19 | 6.87 | 5.93 | 7.36 | 6.52 | 5.66 |
| 79 | 8.59 | 7.05 | 6.14 | 7.74 | 6.73 | 5.85 |
| 80 | 9.01 | 7.22 | 6.34 | 8.16 | 6.93 | 6.04 |
| 81 | 9.47 | 7.39 | 6.55 | 8.60 | 7.13 | 6.29 |
| 82 | 9.95 | 7.56 | 6.77 | 9.09 | 7.33 | 6.50 |
| 83 | 10.47 | 7.71 | 7.00 | 9.61 | 7.52 | 6.76 |
| 84 | 11.02 | 7.86 | 7.25 | 10.18 | 7.69 | 7.00 |
| 85+ | 11.61 | 8.00 | 7.52 | 10.79 | 7.86 | 7.26 |

+ Higher ages the same

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

Policy-000029

Option 6 Table
Monthly Payments for Each $1,000 of Proceeds

(Amounts shown are for the age nearest birthday on the Option Effective Date)

| Ages of Both | One Male and One Female | Ages of Both | One Male and One Female |
|---|---|---|---|
| 50 | $2.97 | 68 | $4.72 |
| 51 | 3.03 | 69 | 4.89 |
| 52 | 3.09 | 70 | 5.06 |
| 53 | 3.16 | 71 | 5.25 |
| 54 | 3.22 | 72 | 5.46 |
| 55 | 3.29 | 73 | 5.68 |
| 56 | 3.37 | 74 | 5.91 |
| 57 | 3.45 | 75 | 6.16 |
| 58 | 3.53 | 76 | 6.43 |
| 59 | 3.62 | 77 | 6.72 |
| 60 | 3.72 | 78 | 7.04 |
| 61 | 3.82 | 79 | 7.37 |
| 62 | 3.92 | 80 | 7.74 |
| 63 | 4.04 | 81 | 8.12 |
| 64 | 4.16 | 82 | 8.54 |
| 65 | 4.28 | 83 | 8.99 |
| 66 | 4.42 | 84 | 9.48 |
| 67 | 4.57 | 85+ | 9.99 |

Higher ages the same

OPTION 7 - 50%
SURVIVOR
ANNUITY

Equal monthly payments shall be made during the life of the chosen primary human being. Upon the death of the chosen primary human being, 50% of the amount of such payments shall continue during the life of the chosen secondary human being. The first payment shall be made on the Option Effective Date. The amount of each monthly payment depends on the ages and sexes of the chosen human beings on the Option Effective Date. We may require proof to our satisfaction of their ages. We may require like proof that any chosen human being is alive on the date any payment conditioned on the life of such human being is due. The initial amount of each monthly payment is shown in the table. We will quote the amount of monthly payments for any other age combination on request. The monthly payments are based on an interest rate of 1.50% per year. No additional interest shall be paid.

*National Life Insurance Company*
*One National Life Drive * Montpelier, Vermont 05604 * (802) 229-3333*

Policy-000030

 NATIONAL LIFE

National Life Insurance Company
Montpelier, Vermont  05604
Tel: 802 229-3333

**Company Structure
Change Endorsement**

National Life Insurance Company has been converted from a mutual life insurance company to a stock life insurance company owned by a mutual insurance holding company.

As the Owner of this policy or contract, you are now a member of this new mutual insurance holding company, National Life Holding Company, which retains voting control of National Life Insurance Company.

Pursuant to this change in company structure, your policy or contract, issued by National Life Insurance Company, is amended in the following manner:

- All references to National Life Insurance Company as "A Mutual Company" are deleted.
- In any and all instances, the statement, "The Owner is a member of National Life Insurance Company" is changed to "The Owner is a member of National Life Holding Company."
- The annual meetings of National Life Holding Company are held at its Home Office in Montpelier, Vermont, on the second Friday in May in each year at 9 o'clock A.M.

Signed for National Life Insurance Company at its Home Office in Montpelier, Vermont, as of this date by

Date:  January 1, 1999

Chairman of the Board
and
Chief Executive Officer

**Please place this page with your policy or contract.**

7715(1098)

Cat. No. 45823

COPY ONLY
NOT A CONTRACT OF INSURANCE

**Term policy with premium adjustment provision.** Premiums to be paid for years shown in Data Section or until prior death of Insured. Death Benefit to be paid at death. Participating.

The Owner is a member of National Life Insurance Company while this policy is in force. The annual meetings of the Company are held at its Home Office in Montpelier, Vermont, on the first Friday in February in each year at 9 o'clock A. M.