IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDITH DRAKE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-3170 |
| | : | |
| NATIONAL LIFE INSURANCE | : | |
| COMPANY, et al. | : | |

## ORDER

AND NOW, this 16th day of February, 2018, upon consideration of Defendant National Life Insurance Company's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff Judith Drake's opposition thereto, and Defendant's reply, and following a January 26, 2018, oral argument, it is ORDERED the Motion (Document 11) is GRANTED. Plaintiff's Amended Complaint is DISMISSED without prejudice. Plaintiff shall have until March 9, 2018, to file a second amended complaint that corrects the deficiencies identified below.[1]

---

[1] Plaintiff Judith Drake is the beneficiary of a life insurance policy issued by Defendant National Life Insurance Company (National) to her late husband, Eric Drake, in 2006. Following her husband's death in August 2016, Mrs. Drake attempted to collect the policy's $500,000 death benefit, but National denied her claim, asserting the policy had lapsed on October 1, 2015, due to her husband's failure to pay the quarterly premium due on that date. Although National claims to have sent three separate requests for payment of the October 1, 2015, premium to Mr. Drake—on September 2, November 3, and December 2, 2015—Mrs. Drake alleges the notices were never received at the Drake home, where she was the recipient of the household's mail. The Drakes also did not receive a cancellation notice National claims to have sent to Mr. Drake on December 14, 2015. Steven Fishman, the Drakes' insurance agent, likewise did not receive the premium and cancellation notices, though copies of the notices were purportedly sent to him.

Mrs. Drake brings this action for "Estoppel/Breach of Contract/Quasi-Contract" against National and ten unnamed "John Doe" Defendants, alleging National's cancellation of the policy was improper because neither her husband (whose mail she received at their shared home) nor Mr. Fishman received notice that premiums were due or delinquent or that the policy was going to be cancelled for nonpayment. Mrs. Drake alleges that had such notices been received, she would have cured the delinquency and prevented the policy from lapsing. National moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Mrs. Drake has failed to state a claim for either breach of contract or promissory estoppel and has not pleaded sufficient facts to invoke the doctrine of equitable estoppel.

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court may consider "only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The court must accept as true all factual allegations in the complaint, but may disregard any legal conclusions. *Id.* at 229.

Although Mrs. Drake's legal theory is not entirely clear from her Amended Complaint, her opposition to the motion to dismiss explains that her claim is based on case law holding that a duty to provide premium notices to insureds may arise based on an insurer's custom or practice of providing such notices. *See* Pl.'s Opp'n 4-5 (citing *Kaeppel v. Mut. Life Ins. Co. of N.Y.*, 78 F.2d 899 (3d Cir. 1935), and *Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409 (Pa. Super. Ct. 2007)). Under these cases, when an insurer has regularly and customarily given notice to its insured that premiums are due, the insurer cannot "forfeit the policy for the nonpayment of the premium and defend [an action to recover on the policy] on the ground that the policy ha[s] lapsed" without first giving such notice to the insured (or advising the insured that notice will no longer be given). *See Kaeppel*, 78 F.2d at 905; *Geise*, 939 A.2d at 422.

*Kaeppel*, the first case on which Mrs. Drake relies, involved a suit by the beneficiary of a life insurance policy to recover on the policy after the insured's death. The policy at issue paid an annual dividend that could, at the insured's election, be used toward payment of the annual premium. Just prior to the tenth anniversary of the policy, the insurer sent a letter to the insured, notifying the insured of the due date of the premium and the applicable grace period, and purporting to enclose both a premium notice and a dividend voucher reflecting the amount of the dividend available for use toward the outstanding premium. The dividend voucher, however, was not included in the mailing. The insured did not pay the premium and died six days after the grace period had lapsed. When the insurer thereafter refused to pay under the policy, the beneficiary brought suit, arguing the insurer had waived its right to lapse the policy until it had informed the insured of the amount of the dividend. On appeal from a judgment in favor of the insurer, the Third Circuit Court of Appeals sided with the beneficiary, holding that in the circumstances presented, the insured had a right to notice of the dividend amount and until notice was given, the insurer "could not forfeit the policy for the nonpayment of the premium and defend on the ground that the policy had lapsed." *Kaeppel*, 78 F.2d at 905. The Court of Appeals concluded the insured was entitled to notice of the dividend amount for two independent reasons. First, the Court held that because the insured had a right under the policy to apply dividends toward the premium owed, he was entitled to notice of the amount of the dividend so that he would know how much he was required to pay. *See id.* at 902-03. Second, the Court held the insured had a right to notice of the dividend amount based on the insurer's custom or practice of giving such notice. *See id.* at 905.

National argues *Kaeppel* is inapposite because it "concerns a duty to provide notice of *dividends* paid where the amount of dividends would reduce or change the amount of premiums due," whereas this case involves a fixed premium (at least during the period when Mr. Drake failed to pay it). *See* Def.'s Reply 5. This Court disagrees. While the notice at issue in *Kaeppel*

was a dividend notice that impacted the premium owed, *Kaeppel*'s holding that a duty to provide notice may arise based on an insurer's custom or practice of giving notice has not been limited to dividend notices or to variable premiums.  In *Geise*, for example, the Pennsylvania Superior Court held an insurer had an obligation to provide its insured with notice of the premium amount due where the insurer had "customarily sent a notice of premium due each year since the inception of the policy."  939 A.2d at 420.  Although the duty to provide notice of the premium amount due also arose because the amount owed depended on variables exclusively within the knowledge of the insurer, the Superior Court stressed that the right to notice could be predicated on either factor—i.e., the nature of the policy *or* the insurer's custom of providing premium notices.  *See id.* at 420 n.6.  Other courts and commentators have also recognized that a duty to send premium notices may exist based on the insurer's longstanding practice of providing such notices, regardless of whether notice is also required based on the variable nature of the premium owed.  *See Carnathan v. Ohio Nat'l Life Ins. Co.*, No. 06-999, 2008 WL 2578919, at *3 (M.D. Pa. June 26, 2008) (holding an insurer's longstanding practice of providing its insured with notice that his fixed annual premium was due and payable could give rise to a duty to provide such notice); *DeMann v. Ass'n Underwriters of Am., Inc.*, 13 Pa. D. & C. 3d 208, 214-15 (Pa. Ct. Com. Pl. 1979) ("[W]hen an insurer establishes a practice of giving notice of premiums due so as to lead the insured to believe that such notice will be given regularly, the insurer cannot declare a forfeiture for nonpayment of premium if such nonpayment is attributable to the insurer's failure to provide the notice." (citation omitted)); *accord* 5 Steven Plitt et al., *Couch on Insurance* § 71:7 (3d ed. Dec. 2017 update).

National also argues Mrs. Drake has failed to state a plausible claim based on *Kaeppel* and *Geise* because (1) the notice obligation recognized in those cases extends only to the insured, not to the policy beneficiary or the insurance agent; (2) the exhibits to the Amended Complaint establish that National in fact sent both premium and lapse notices to Mr. Drake; and (3) the Amended Complaint fails to allege any facts suggesting that National had a longstanding practice of sending premium or lapse notices such that the Drakes or Mr. Fishman would reasonably believe notices would be given.

While National is correct that *Kaeppel* and *Geise* address only an insurer's duty to provide premium notices to its insured, and not to a policy beneficiary or an insurance agent, Mrs. Drake's claim is based at least in part on National's failure to send premium and lapse notices to her husband, the insured, whose mail she received and processed.  *See* Am. Compl. ¶¶ 12, 16.  This claim, at least, is potentially cognizable under *Kaeppel* and *Geise*.

As to National's contention that Mrs. Drake's claim is foreclosed because National sent premium and lapse notices to Mr. Drake, this argument is premature.  Although the exhibits to the Amended Complaint include "fiche copies" of certain notices that National claims to have sent to Mr. Drake, the Amended Complaint alleges these notices were never received in the Drake household, where Mrs. Drake was "at all times material the recipient of the household's mail."  Am. Compl. ¶ 12.  Whether Mr. Drake received the notices is thus a factual issue that cannot be resolved at the motion to dismiss stage.

Nevertheless, to state a plausible claim for relief based on *Kaeppel* and *Geise*, Mrs. Drake must plead facts supporting the reasonable inference that National had a custom or practice of giving notice of premiums due for such a length of time as to lead the insured to believe that notice would be given.  *See Geise*, 939 A.2d at 422; *cf. Williams v. Gillott*, No. 20111886, 2011 WL 10619020 (Pa. Ct. Com. Pl. Sept. 21, 2011) (holding a plaintiff failed to state a claim based

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

on *Kaeppel* and *Geise* where the record was "completely devoid of any consistent practice [of providing premium notices], or any specific reliance upon any such notification from [the insurer]"), *aff'd*, 60 A.3d 843 (Pa. Super. Ct. 2012) (unpublished table disposition).  While the Amended Complaint recites that "Plaintiff (and Fishman) justifiably and reasonably relied on receiving (for Eric Drake) notices of delinquency and cancellation," Am. Compl. ¶ 16, it does not allege that National had a custom of practice of sending such notices, which Mrs. Drake, as recipient of the household mail, presumably would have received.  Although this pleading deficiency requires dismissal of the Amended Complaint, based on counsel's representations at oral argument, it appears Mrs. Drake may be able to correct the deficiency and state a plausible claim for relief.  Accordingly, the motion to dismiss is granted, but the Amended Complaint is dismissed without prejudice to Mrs. Drake's right to file a second amended complaint within the time permitted above.

4