IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDITH DRAKE | : | CIVIL ACTION |
| v. | : | No. 17-3170 |
| NATIONAL LIFE INSURANCE COMPANY, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                    December 4, 2018

      In this civil action, Plaintiff Judith Drake, the beneficiary of a life insurance policy issued by Defendant National Life Insurance Company (National) to her late husband,[1] challenges National's refusal to pay the policy's $500,000 death benefit following her husband's death in August 2016. National denied Ms. Drake's claim for payment on the ground that the policy had lapsed. National has filed a Third-Party Complaint against Steven A. Fishman, an insurance agent affiliated with National, asserting claims for contribution and/or indemnity. Fishman moves to dismiss or strike the Third-Party Complaint. The parties agree National's third-party claims are viable only insofar as the claims for which National seeks contribution or indemnity sound in tort, but dispute the nature of those claims. Because the Court finds Ms. Drake's claims against National sound in contract, not tort, Fishman's motion to dismiss will be granted, and the Third-Party Complaint will be dismissed without prejudice to National's right to bring a separate action for contribution and/or indemnity in the event it ultimately becomes subject to tort liability in this action.

---

[1] Judith Drake is referred to herein as "Ms. Drake"; her late husband, Eric Drake, is referred to as "Mr. Drake."

**BACKGROUND**

On October 1, 2006, National issued a life insurance policy to Mr. Drake with a death benefit of $500,000. Ms. Drake is the beneficiary of the policy. Fishman, an insurance agent affiliated with National, assisted Mr. Drake in procuring the policy.

On August 16, 2016, Mr. Drake died. Ms. Drake promptly notified National of her husband's death and attempted to collect the death benefit under the policy, but National denied the claim on the basis that the policy had lapsed due to Mr. Drake's failure to pay the premium for the period from October 1, 2015, through December 31, 2015.

Ms. Drake thereafter filed this action, asserting claims against National for bad faith, negligence, "Breach of Contract/Quasi-Contract/Unjust Enrichment/Promissory Estoppel," and breach of fiduciary duty, based in part on the theory that, as the named beneficiary of the policy, she was entitled to receive notice that the policyholder had failed to make required payments, putting her at risk of losing her right to any money from the policy. Ms. Drake also faulted National for failing to advise Fishman, who procured and managed the policy for Mr. Drake, that the policy would be canceled for lack of payment. National moved to dismiss the Complaint in its entirety.

In lieu of responding to the motion to dismiss, Ms. Drake elected to file a First Amended Complaint, asserting a single count for "Estoppel/Breach of Contract/Quasi-Contract." National again filed a motion to dismiss. National argued Ms. Drake could not state a claim for breach of contract because (1) the policy had lapsed, relieving National of any obligation to pay the death benefit, and (2) the policy did not impose a duty on National to send lapse notices to Ms. Drake or Fishman. National also argued Ms. Drake could not state a claim for equitable estoppel, which is an affirmative defense, not a separate cause of action, and failed to state a claim for

promissory estoppel because, inter alia, the policy was a valid and enforceable contract. Ms. Drake opposed the motion, defending her claim entirely on the basis of case law holding that where an insurer has regularly and customarily given notice to its insured that premiums are due for such a length of time as to lead the insured to believe notice will be given, the insurer cannot "forfeit the policy for the nonpayment of the premium and defend [an action to recover on the policy] on the ground that the policy ha[s] lapsed" without first either giving the customary notice to the insured or advising the insured that notice will no longer be given. *Kaeppel v. Mut. Life Ins. Co. of N.Y.*, 78 F.2d 899, 905 (3d Cir. 1935); *see also Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409, 422 (Pa. Super. Ct. 2007).

On February 16, 2018, this Court issued an Order granting National's motion to dismiss, but permitting Ms. Drake to file a second amended complaint. Order, Feb. 16, 2018, ECF No. 27. The Court concluded that insofar as Ms. Drake's claim was based on National's failure to send premium and lapse notices to her husband (the policyholder), whose mail Ms. Drake received and processed, the claim was potentially cognizable under *Kaeppel* and *Geise*. *Id.* However, the Court found Drake's First Amended Complaint failed to plead a plausible claim under this theory because it did not allege that National had a custom and practice of sending such notices. *Id.*

On March 9, 2018, Drake filed a Second Amended Complaint, again asserting a single count for "Estoppel/Breach of Contract/Quasi-Contract." The Second Amended Complaint alleges that when Mr. Drake purchased the policy in October 2006, Fishman advised him that National would send him a premium request letter when payment was due, "just like any other company billing a customer." Second Am. Compl. ¶ 19. In addition, for nine years after the policy was issued, National followed a custom and practice of sending premium request letters to

3

Mr. Drake, who relied on the letters to recall when premium payments were due and to make timely payments. *Id.* ¶¶ 17, 26. Although National claims to have sent premium request letters to Mr. Drake on September 2, 2015, November 3, 2015, and December 2, 2015, Ms. Drake believes those letters were not sent, as they never arrived at the Drakes' home, where Ms. Drake processed her husband's mail.[2] *Id.* ¶¶ 11, 14, 16.

According to the Second Amended Complaint, Fishman also advised Mr. Drake that National would send him at least one late notice if he failed to make a timely payment and would inform Fishman if Mr. Drake missed a payment so that Fishman could reach out directly to Mr. Drake. *Id.* ¶¶ 20-21. In fact, National failed to send a late notice letter to either Mr. Drake or Fishman, and failed to advise either of them that it would no longer be sending late notice letters. *Id.* ¶ 29.

As a result of National's failure to send a premium request letter to Mr. Drake, he failed to make the required quarterly payment for the period October 1, 2015, through December 1, 2015, causing the policy to lapse and causing financial harm to Ms. Drake. *Id.* ¶¶ 18, 22, 31. Had National sent a premium request, late notice, or lapse letter to Mr. Drake, he would have made all appropriate payments to ensure the policy did not lapse. *Id.* ¶ 22. Likewise, the policy would not have lapsed if National had sent any of these notices to Fishman, as Fishman would have contacted Mr. Drake about the missed payment. *See id.* ¶ 23.

National answered the Second Amended Complaint and also filed a Third-Party Complaint against Fishman, asserting claims for contribution and/or indemnity. In its Third-

---

[2] The Drakes also did not receive a December 14, 2015, lapse letter that National purportedly sent advising Mr. Drake that it would consider reinstating the policy if the premium were paid by January 11, 2016. Second Am. Compl. ¶¶ 12, 14. Fishman, too, did not receive either the premium request letters or the lapse letter.

4

Party Complaint, National denies that it failed to provide Mr. Drake with notice of the quarterly payment due October 1, 2015, and denies that it failed to provide notice of the lapse of the policy to either Mr. Drake or Fishman. *See* Third-Party Compl. ¶¶ 8-11. Specifically, the Third-Party Complaint alleges Fishman had access to all the notices National sent to Mr. Drake, including the lapse letter, via National's "Life Agent Portal" and thus either knew or should have known that Mr. Drake had not paid the required premium, the policy had lapsed, and action was needed to reinstate the policy. *See id.* ¶¶ 12-15. The Complaint further alleges that to the extent Fishman was unaware of the lapse letter, his lack of knowledge was caused by his own negligence in failing to check the Portal regularly for client correspondence, which was the proximate cause of Ms. Drake's alleged damages. *Id.* ¶¶ 21-22. National thus claims (1) to the extent that any party is found liable to Ms. Drake, such liability should be imposed on Fishman alone; and (2) to the extent that Ms. Drake is entitled to any recovery from National, Fishman is liable to National for such recovery by way of contribution or indemnity. *Id.* ¶¶ 24-26.

Fishman has filed a motion to dismiss National's Third-Party Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and to strike the Complaint pursuant to Rule 14(a)(4). National opposes the motion.

**DISCUSSION**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the

5

plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Fishman argues National cannot state a cognizable claim for either contribution or common law indemnity[3] because both theories apply only where the liability to be apportioned or shifted sounds in tort, and in this case, Ms. Drake seeks to hold National liable on the insurance contract. National does not dispute the legal principle undergirding Fishman's argument—i.e., that contribution and common law indemnity apply only to tort claims. Rather, National argues both theories apply here because Ms. Drake's claims are, in fact, tort claims, not contract claims.

As an initial matter, the Court agrees with the parties that National may assert a claim for contribution or indemnity against Fishman only insofar Ms. Drake's claims against National sound in tort.[4] In evaluating the nature of Ms. Drake's claims, the Court's analysis begins with *Kaeppel* and *Geise*, on which those claims are based.

---

[3] The other basis for indemnity—"an express contract to indemnify," *Pansini v. Trane Co.*, No. 17-3948, 2018 WL 2129453, at *7 (E.D. Pa. May 9, 2018) (quoting *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 448 (3d Cir. 2000))—is inapplicable here.

[4] Although Fishman notes there is an argument that New Jersey substantive law could apply to National's claims for contribution and common law indemnity, *see* Fishman's Mem. in Supp. of Mot. to Dismiss 6 n.1 & 8 n.3, the parties appear to agree those claims are governed by Pennsylvania law, *see id.* at 6-10; National's Opp'n to Fishman's Mot. to Dismiss 9-10, and the Court therefore applies Pennsylvania law in evaluating them.

Contribution is a method of apportioning liability among joint tortfeasors who share responsibility for the plaintiff's injuries. *See Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986). In Pennsylvania, the right of contribution "is governed exclusively by statute." *Kemper Nat'l P & C Cos. v. Smith*, 615 A.2d 372, 379 (Pa. Super. Ct. 1992). The Uniform

As this Court previously observed in ruling on National's motion to dismiss, *Kaeppel* was a contract action—a suit by the beneficiary of a life insurance policy to recover on the policy after the insured's death. *See* 78 F.2d at 900. The policy at issue paid an annual dividend that could, at the insured's election, be used toward payment of the annual premium. Just prior to the tenth anniversary of the policy, the insurer sent a letter to the insured, notifying the insured of the due date of the premium and the applicable grace period, and purporting to enclose both a premium notice and a dividend voucher reflecting the amount of the dividend available for use toward the outstanding premium. The dividend voucher, however, was not included in the mailing. The insured did not pay the premium and died six days after the grace period had lapsed.

When the insurer thereafter refused to pay under the policy, the beneficiary filed suit, arguing the insurer had waived its right to lapse the policy until it had informed the insured of the amount of the dividend. On appeal from a judgment in favor of the insurer, the Third Circuit

---

Contribution Among Tort-feasors Act, 42 Pa. Cons. Stat. Ann. §§ 8321-8327, provides that "[t]he right of contribution exists among joint tort-feasors," *id.* § 8324(a), and defines the term "joint tort-feasors" to mean "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them," *id.* § 8322. Under the Act, a claim for contribution may be asserted where "(1) the parties combined to produce the plaintiff's injury; (2) *the parties are each liable in tort to the plaintiff*; and (3) a tortfeasor has discharged the common liability by paying more than his pro rata share." *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987) (emphasis added).

     Common law indemnity, in contrast, is "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni*, 506 A.2d at 871. The right of indemnity exists when "a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another and for which he himself is only secondarily liable," such as "where there is a relation of employer and employee, or principal and agent." *Kemper*, 615 A.2d at 374-75 (emphasis omitted) (quoting *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 241, 250-51 (Pa. 1983)). "Common law indemnity requires at least two elements: (1) a preexisting legal relationship between the indemnitor and the indemnitee, and (2) a tort." *Pansini*, 2018 WL 2129453, at *7.

Court of Appeals sided with the beneficiary, holding that in the circumstances presented, the insured had a right to notice of the dividend amount and until notice was given, the insurer "could not forfeit the policy for the nonpayment of the premium and defend on the ground that the policy had lapsed." *Id.* at 905. The Court of Appeals concluded the insured was entitled to notice of the dividend amount for two independent reasons. First, the Court held that because the insured had a right under the policy to apply dividends toward the premium owed, he was entitled to notice of the amount of the dividend so that he would know how much he was required to pay. *See id.* at 902-03. Second, the Court held the insured had a right to notice of the dividend amount based on the insurer's custom or practice of giving such notice. *See id.* at 905. Because the trial court had found that the insurer failed to send the insured a dividend voucher, the Court of Appeals held the insured was entitled to judgment in the amount of the policy's $20,000 death benefit. *See id.*[5]

---

[5] Like *Kaeppel*, *Geise* was a "breach of contract action to recover benefits on a life insurance policy owned by [a company] on the life of one of its partners." 939 A.2d at 412. After timely paying the annual premium on the policy for more than a decade, the policyholder missed a payment. Although the insurer claimed to have sent the policyholder premium and late notices regarding the payment, the policyholder maintained it did not learn of the missed payment until it received a cancelation notice from the insurer. The policyholder thereafter unsuccessfully sought to have the policy reinstated, but while its reinstatement efforts were ongoing, the partner whose life the policy insured died. Following the death, the policyholder demanded payment of the policy's death benefit, the insurer denied the claim, and the policyholder sued the insurer for breach of contract. The case proceeded to trial, and the jury returned a verdict for the policyholder, awarding it an amount equal to the net proceeds of the policy. On appeal, the Pennsylvania Superior Court affirmed, holding, inter alia, that the trial court had properly instructed the jury, pursuant to *Kaeppel*, that (1) "an insurance company which has a standard custom or practice of giving notice of premiums due for such a length of time as to lead an insured to believe notice will be given cannot cancel the policy without first giving such notice," and (2) "if no notice of premium due was giving by [the insurer], [the insurer] could not cancel the policy even if [the policyholder] should have known that some premium was due." *Id.* at 422.

National argues the remedy fashioned in *Kaeppel* is a tort remedy "based on the insured's reasonable reliance on past practice and a failure to warn (i.e., an omission) when the insurer abandons its practice." National's Opp'n to Fishman's Mot. to Dismiss 7. National further argues the court in *Kaeppel* specifically rejected the notion that the insurer's duty to provide dividend notices was contractual, citing the following passage from the opinion:

> Some of the cases go so far as to say that custom and usage in respect to personal notice to the plaintiff become a part of the contract, but this upon reason and authority seems untenable. The great weight of authority is that while custom and usage do not become an actual part of the contract between the insured and the company, yet they are such an incident thereto and are so incorporated into the spirit of their dealings as to require the company to keep them up or to give notice of their discontinuance.

*Kaeppel*, 78 F.2d at 904-05. While the *Kaeppel* court rejected the notion that the duty that arises as a result of an insurer's custom and practice of giving notice of premiums due becomes part of the insurance contract, it does not follow that this duty—or the remedy awarded in *Kaeppel*—sounds in tort. Nothing in the court's opinion suggests the court regarded custom and usage as establishing a tort duty. Indeed, a leading contracts treatise suggests a duty to provide premium notices may arise by "implied agreement." *See* 16 *Williston on Contracts* § 49:85 (4th ed. May 2018 Update) (explaining that if a "custom, or course of performance [of giving the insured notice of premiums due] is established and the insured proves knowledge of and reliance on it, an implied agreement of the company to give notice is created and the company cannot lawfully declare a forfeiture without first giving such a notice"). Nor is there is any basis to conclude that the remedy fashioned in *Kaeppel* was a tort remedy where the claim asserted in the case was one

9

for breach of contract. *See Kaeppel*, 78 F.2d at 905 (ordering the district court to enter judgment for the insured for the sum of $20,000, the amount of the policy's death benefit).[6]

National also argues Ms. Drake's claims against it sound in tort because the decision in *Kaeppel* is based on equitable estoppel, a tort doctrine. Although the *Kaeppel* court did not use the term "estoppel" to describe the rule it recognized, some courts have characterized the rule as a species of estoppel. *See, e.g.*, *DeMann v. Ass'n Underwriters of Am., Inc.*, 13 Pa. D. & C. 3d 208, 215 (Pa. Ct. Com. Pl. 1979) (noting "[t]he majority rule is that an insurer's custom of giving regular notices of the time for payment of premiums constitutes a waiver or estoppel on the insurer" (citing 14 Appleman, *Insurance Law & Practice* § 8199)). As Fishman notes, however, under Pennsylvania law, "[e]quitable estoppel is not a separate cause of action," but a doctrine that "may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990); *see also Gilius v. Bd. of Supervisors of Fairview Twp.*, 552 A.2d 327, 330 (Pa. Commw. Ct. 1988) (noting "equitable estoppel has been recognized only as a defense and not as the basis of a cause of action in itself"). To the extent Ms. Drake's claim for "Estoppel/Breach of Contract/Quasi-Contract" implicates equitable estoppel principles, it does so defensively, as a basis on which to prevent National from defending her action to recover on the policy on the basis that the policy lapsed. Because Ms. Drake cannot pursue an independent claim for equitable estoppel (as National argued in its motion to dismiss Ms. Drake's Amended

---

[6] National argues the remedy created by *Kaeppel* is a tort remedy "based on omission where the insurer has a duty to disclose," citing *Elbeco Inc. v. National Retirement Fund*, No. 15-318, 2016 WL 3902933 (E.D. Pa. July 19, 2016). National's Opp'n to Fishman's Mot. to Dismiss 7. *Elbeco*, however, is inapposite. In *Elbeco*, the court addressed common law claims of fraud by omission and negligent misrepresentation by omission. *Id.* at *7-10. But neither of these tort theories was advanced or addressed in *Kaeppel*.

10

Complaint), the Court declines to construe her claim as such and instead construes the claim as one sounding in contract, consistent with the theory of liability advanced in *Kaeppel* and *Geise*.

Having concluded that Ms. Drake's claim against National does not sound in tort, the Court also finds National cannot state a claim for contribution or indemnity against Fishman. Fishman's motion to dismiss will therefore be granted, and National's Third-Party Complaint will be dismissed without prejudice to reassertion in the event National ultimately becomes subject to tort liability in this action. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993) (holding that while "a party defendant who claims a right of contribution or indemnity from third persons" may "implead[] the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected").[7]

An appropriate order follows.

BY THE COURT:

    /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[7] Because the Court finds National has not stated a claim against Fishman for contribution or indemnity, the Court need not address Fishman's alternative argument that the Third-Party Complaint should be stricken because it alleges that Fishman alone is directly liable to Ms. Drake.